## RICHEY v. STATE

(No. 1015; Decided October 18, 1921; 201 Pac. 154)
(Rehearing Denied March 21st, 1922; 205 Pac. 304)

Indictment and Information—Larceny of Neat Cattle—Criminal Law—Motion to. Quash—Variance as to Name of Owner in Larceny Charge—Evidence of Uncontradicted Fact not Prejudicial—Identity of Stolen Property—Animals—Inferences —Evidence of Rebranding of Livestock—Corpus Delicti—One Larceny. of .Cattle of Different Owners—Exception to Group of Instructions Disregarded if One be Correct—Verdict Describing Property Sufficient—Value—Sufficiency of Finding of. Value.

1. An information charging the larceny of neat cattle from different owners at the same time and place charges but one larceny.

2. A defect, if any, in an information in a larceny case in failing to allege that the owner of the stolen property

was a co-partnership or a corporation was in the manner of charging the crime, and was waived by failure to move to quash under Comp. Stats. 1920, Sections 7462, 7483, and 7487.

3. An information charging ownership of stolen cattle in Davision Brothers under which evidence was received and verdict rendered finding ownership in Davidson Brothers would not constitute a fatal variance in view of Comp. Stats. 1920, Section 7463.

4. In a prosecution for the larceny of neat cattle, where a defendant admitted shipping 32 head of cattle to a certain destination, the admission and evidence of records showing such facts, if erroneous, was not harmful.

5. In a prosecution for larceny of neat cattle, held that hides of cattle killed at a packing plant were sufficiently identified to warrant examination thereof by the jury.

6. In prosecution for larceny of neat cattle, where fact that cattle discovered by inspector at South Omaha were the cattle which had been claimed and shipped by defendant, was inferred from proven facts, ownership in prosecuting witnesses could not be inferred from the fact previously inferred that the defendant had claimed, possessed, and owned them, but could be proved by any competent evidence tending to establish it, and was proved by evidence showing ownership of original brands on the animals, which was *prima facie* proof of the ownership of the animals themselves, and there was no question of one inference resting upon the other.

7. In a prosecution for larceny of neat cattle, where defendant admitted recent branding of cattle in question because the old brands could not be deciphered readily, the question was presented to the jury whether defendant may not honestly have believed that she owned the cattle, and evidence of similar misbranding of other cattle was properly admitted, even conceding that the misbranding of such other cattle did not make out a *prima facie* case of larceny of such cattle.

8. In a larceny case, evidence of the possession by defendant of goods other than those mentioned in the information, may not be relevant unless it be sufficient to prove *prima facie* the relevant fact sought to be established. (State vs. Jones, 27 Wyo. 48; 191 Pac. 1075, distinguished.)

9. In a prosecution for larceny of neat cattle, proof of loss of the cattle in question and even an imperfect identity of

them in the possession of the accused under circumstances of an incriminating character, may not only identify the persons guilt, but satisfactorily establish the *corpus delicti.*

10.  The theory of the prosecution in a larceny case that although there were cattle of different owners taken, rebranded and sold, only one larceny was committed, held not prejudicial to defendant in making her defense, the nature of the crime being unaffected by the number of cattle found by the jury to have been stolen.

11.  An aggrieved party must point out definitely and particularly the ruling of which he complains, on writ of error, and an exception to the giving of a group of instructions will be disregarded if any one of the group be correct.

12.  A verdict must be construed with reference to the information and the trial, and if, when so construed, it be responsive to the issues, and the court can understand the true intent and meaning of the jury, it is good.

13.  A verdict referring to crime as "stealing live stock" was good in a prosecution for stealing "neat cattle."

14.  A verdict finding defendant guilty of stealing live stock, the property of, viz. "3 of Davidson Bros. and 1 of Lincoln Live Stock Company as charged in the information," *held* not too indefinite, evidently referring to neat cattle mentioned in the information and evidence.

15.  Omission of the dollar sign and word "dollars" in a verdict in a prosecution for larceny, and the placing before the figures the sign signifying number, did not render verdict indefinite, under Comp. St. 1920, § 7549.

ON PETITION FOR REHEARING

16.  A point urged on application for rehearing in a prosecution for larceny of cattle that it appeared from the evidence that the cattle in question had drifted upon defendant's lands from the open range whereby she obtained possession of them innocently, and that the evidence failed to show her intent to steal them at the time of the taking, *held* to be without merit in view of testimony of the accused at the trial that she had never seen nor shipped the cattle in controversy, which, by other evidence were shown to have been included in a shipment made by defendant.

17.  In a prosecution for the larceny of certain livestock upon which brands had been changed, evidence concerning other cattle of complaining witness showing a similar

change of brands found on the range in the vicinity of the station from which the stolen cattle had been shipped by defendant, and soon thereafter, was not rendered inadmissible by the fact that the ownership of the cattle bearing such changed brands was shown to be in dispute in a civil action pending in the District Court at the time of the larceny trial in which accused was plaintiff.

18.  Where the instructions in a larceny case as a whole do not present an erroneous view of the law as applied to the facts, a general exception to the charge is insufficient.

19.  The rule justifying a reversal and new trial in capital cases in the absence of proper exceptions reserved at the trial where the record shows such fundamental and prejudicial error as to amount to a denial of justice and the constitutional right of a defendant to a fair and impartial trial, *held* inapplicable in a larceny case where instructions complained of are neither erroneous, prejudicial nor upon the whole incorrect in theory.

ERROR to the District Court of Lincoln County; HON. JOHN R. ARNOLD, Judge.

Annie Richey was convicted of larceny and brings error.

*C. E. Melvin, J. L. Mullings and M. E. Wilson,* for plaintiff in error.

The court erred in not sustaining defendant's motion to quash the information on the ground that it charged several offenses in one count. (6186 Comp. Stats. 1910. Ackerman v. State, 7 Wyo. 504; 54 Pac. 228; Joslyn v. State, 128 Ind. 160; 27 N. E. 492; State v. Bliss, 68 Pac. 87.) The information is defective in failing to state whether Davidson Brothers is a partnership or a corporation, and the same is true of Lincoln Livestock Company, another alleged owner. (State v. Clark, 223 Mo. 48; 122 S. W. 665; 18 Ann. Cas. 1120.) The court erred in permitting inspection of hides removed from cattle at South Omaha, there being insufficient evidence of their identification. (State v. Potello, 40 Utah 56; 119 Pac. 1023.) Shipping records, or records kept by persons in charge of stock yards should not be treated as primary evidence, and the action of the court

below in doing so was prejudicial to the defendant. (1
Morewitz Corp., 40; 3 Elliott Ev. 1945; Railroad v. Cun-
nington, 39 O. St. 327; Kusaw v. M. Co., 75 Fed. 860; Terry
v. Bank, 93 Ala. 599; 9 So. 229; Jewett v. Ry. Co., 219 Mass.
531; 107 N. E. 434.) It was error to receive evidence as to
other alleged crimes or the possession of other property
claimed to have been stolen. (17 R. C. L. 775; Clampitt v.
U. S., 6 Ind. 92; 89 S. W. 666; Paris v. U. S. 260 Fed. 529;
16 C. J. 586; Baxter v. State, 81 O. St. 167; 110 N. E. 456.)
The verdict is not sustained by sufficient evidence and the
trial court erred in refusing to grant a new trial. (Kester
v. Wagner, 22 Wyo. 512; 156 Pac. 748; Felton v. Spiro, 78
Fed. 576.) The word "steal" imports in a more restricted
sense what is known as statutory larceny. (Hughes v. Ter-
ritory, 56 Pac. 708.) A felonous intent must be shown in
larceny prosecutions. (Phelps v. People, 55 Ill. 334; Peo-
ple v. Schultz, 79 Mich. 315; Wilson v. People, 39 N. Y.
459.) There was no evidence that defendant stole the cat-
tle in question or that they were stolen by anyone. (State
v. Potello, 40 Utah 506.) Defendant's possession of them
would not establish *prima facie* evidence of guilt. (17 R. C.
L. 78.) No presumption of theft or illegality arises from
showing that a defendant has the possession of property
which has been lost. (Jones v. State, 183 Pac. 745.) The
court erred in giving instruction No. 3 as the jury might
have inferred from it that evidence of a brand was *prima
facie* evidence of ownership which required defendant to
disprove the ownership. (State v. Barretta, 47 Utah 479;
155 Pac. 343 and authorities therein cited. (In State v.
Cason, 167 Pac. 283 such an instruction was approved on
the ground that the form had been approved in Territory
v. Meredith, 14 N. Mex. 298, but no instruction of the kind
appears to have been passed upon in the latter case. In-
struction No. 4 was erroneous as to the proof required of
the charge of the offense. (State v. Romeo, 42 Utah 46; 128
Pac. 536.) Instruction No. 6 should not have been given.
Instruction No. 8½ was an attempt to define circumstantial
evidence but mis-stated the rule. (3 Ency. Ev. 92.) To

justify inference of guilt, circumstantial evidence must exclude every other reasonable hypothesis. (State v. Brady, 91 N. W. 801; Pa. R. R. Co. v. Nelson, 259 Fed. 156; Lopez v. Campbell, 163 N. Y. 340; Everett v. People, 216 Ill. 478; State v. Hudson, 66 S. C. 394; 34 S. E. 968.) It is the duty of the trial court to instruct as to the nature and effect of circumstantial evidence. (1 Starkie, Ev. 789.) Instruction No. 9, defining reasonable doubt, was in the identical form given in the case of State v. Robinson, 18 Wyo. 216; 106 Pac. 24, where it was condemned by this court. A plainer case of prejudicial error could not exist. The Robinson case has been cited with approval in two Colorado cases. (Satkison v. People, 138 Pac. 26; Highley v. People, 177 Pac. 975.) Instruction No. 9½ clearly invades the province of the jury; the verdict does not find the defendant guilty of stealing neat cattle and does not find the value of the property stolen nor the number stolen. (Merrill v. State (Wyo.) 136 Pac. 795; Thompson v. State (Wyo.) 130 Pac. 850.)

*W. L. Walls*, Attorney General, and *Vincent Carter*, Deputy Attorney General, for defendant in error.

Numerous assignments made in the petition in error are not discussed in the brief of plaintiff in error, and must be considered abandoned. (Rule No. 14 Sup. Ct. Boswell v. Bliler, 9 Wyo. 277; Reardon v. Horton, 16 Wyo. 363.) The trial court, in overruling the motion to quash, was supported by the case of Ackerman v. State, 7 Wyo. 504. The Indiana authorities are not in point. (Furnace v. State, 153 Ind. 93.) The question of ownership of the stolen property was not raised in the motion to quash and was waived. The hides brought from Omaha were clearly identified. The shipment of 32 head of cattle by the accused was admitted. Plaintiff in error was not prejudiced by the introduction of records of stockyards and transportation companies. Evidence as to the possession by the accused of other branded cattle was properly admitted for the reason that it tended to establish a relative fact, the misbrand-

ing of cattle. (17 R. C. L. 75.) The case of Paris v. U. S., 260 Fed. 529 cited by plaintiff in error is entirely different on the facts and cannot fairly be considered an authority here. The evidence was clearly admissible to show misbranding by defendant and was not offered for any other purpose and was intended to prove that defendant was pursuing a course of the same acts. (State v. Myer, 82 Mo. 588.) As to the instructions the evidence shows that a general exception was taken to all of the instructions without specifying any particular instruction, so that if any instruction be good, the exception fails. (Palmer v. State, 9 Wyo. 40, Dickerson v. State, 18 Wyo. 440. Bronson Instruction, Jrs. 161.) A careful examination of the instructions given show them to be correct statements of the law. Take for example, instruction No. 6 which was supported by Turner v. State, 102 Ind. 425. Instruction No. 8½ defining circumstantial evidence is a fair definition of the term. The instruction referred to in the Utah case of State v. Barretta, 47 Utah 479, 155 Pac. 343 seems to be entirely different. (Cunningham v. State, 56 Neb. 69.) Instruction No. 9½ is a fair statement of the law. Where a verdict is sought to be set aside on the ground that it is contrary to law, the complaint relates to the law as given by the court in its instructions to the jury, and we find nothing in the record here showing that the verdict was contrary to the law as set forth by the judge in his instruction. All fair intendments will be made to support the verdict. (1 Bish. Cr. Pro. 1005; State v. Ryab, 13 Minn. 370; Ackerman v. State, supra.) The record discloses that defendant was ably defended and every effort made to protect her rights, and there appears no reason why the verdict and judgment should not be affirmed.

KIMBALL, Justice.

Annie Richey was convicted of larceny of neat cattle, and brings the case here in error.

The information, with the formal parts omitted, charges that:

"Annie Richey and Charles King, late of the county aforesaid, on the 23rd day of July, A. D. 1919, at and in the county aforesaid, then and there being, did then and there unlawfully and feloniously steal, of the personal property of Davision Brothers, seventeen head of neat cattle, then and there of the value of $50.00 each; two head of neat cattle of the personal property of William Spencer, then and there of the value of $50.00 each; four head of neat cattle of the personal property of Lincoln Livestock Company, then and there of the value of $50.00 each, and two head of neat cattle of the personal property of Ernest Corless, then and there of the value of $50.00 each."

Defendant King was found not guilty, and when hereinafter we mention the defendant we refer to plaintiff in error only.

A motion to quash the information upon the ground that it charges in one count four separate and distinct offences was denied by the court, and this ruling is assigned as error. We construe the information to charge that all the cattle mentioned in it were taken at the same time and place, and, therefore, it charges but one larceny. This conclusion is unaffected by the circumstance that it appears that the cattle stolen were not all owned by the same person or company. (Ackerman v. State, 7 Wyo. 504, 54 Pac. 228; 17 R. C. L. 54; note to State v. Sampson, 42 L. R. A. (N. S.) 967.) There is little, if any, authority to the contrary. The case of U. S. v. Beerman, 5 Cranch. C. C. 412, Fed. Case No. 14560 was expressly disapproved in State v. Ackerman, supra. Counsel rely upon State v. Bliss, 27 Wash. 463, 68 Pac. 87 and Joslyn v. State, 128 Ind. 160, 27 N. E. 492, 25 Am. St. Rep. 425, but neither case can be accepted as authority in support of the motion.

It appears from State v. Makovsky, 67 Wash. 7, 120 Pac. 513, that the Bliss case has been expressly overruled, and by Furnace v. State, 153 Ind. 93, 54 N. E. 441, the Joslyn case, if not overruled, has been limited, as an authority, to those cases where the information does not charge that the differ-

ent articles of property were stolen at the same time. The motion to quash was properly denied.

It is argued that the information is insufficient because it fails to allege that Davision Brothers was a co-partnership and the Lincoln Livestock Company a corporation. The omission of those allegations was not made the ground of the motion to quash nor of any other objection to the information in the trial court, is not assigned as error here, and we might well disregard the point. However, as it is claimed that the information for this reason is fatally defective (citing State v. Clark, 223 Mo. 48, 122 S. W. 665, 18 Ann. Cas. 1120), we shall not pass the question without consideration. In the case cited, where it was held that the information for larceny was fatally defective for failure to allege the incorporation of the owner of the stolen goods, the question was considered, in the absence of a statute, as one under the common law. But, in this state, the effect of defects and imperfections in informations is largely regulated by statute. Section 7462, Wyo. C. S. 1920 provides that "No indictment shall be deemed invalid * * * for any defect or imperfection which does not tend to the prejudice of the substantial rights of the defendant upon the merits;" Section 7483, that a motion to quash may be made when there is a defect "in form of the indictment, or in the manner in which the offense is charged;" and Section 7487, that defects which may be excepted to by motion to quash, shall be waived by demurring, or pleading in bar, or not guilty. Under such statutes, indefiniteness is a defect in the manner of charging the offense, and, unless raised by motion to quash, may be waived. (Wilbur v. Territory, 3 Wyo. 268, 21 Pac. 698; Bryant v. State, 7 Wyo. 311, 51 Pac. 879; Koppola v. State, 15 Wyo. 398, 89 Pac. 576; White v. State, 23 Wyo. 130, 147 Pac. 171; State v. Messenger, 63 O. St. 398, 59 N. E. 105; Arnsman v. State, 11 O. Cir. Ct. (N. S.) 113.) Without deciding that the information is defective at all in failing to describe more fully Davision Brothers and Lincoln Livestock Company, we hold that the defect, if any, was in the manner of charging the crime, not suffi-

cient to invalidate the information, and not having been presented to the court by the motion to quash, was waived by the plea of not guilty.

It is contended that there was a fatal variance because the evidence on the part of the state tended to prove, and the verdict of the jury found, that the cattle alleged in the information as the property of Davision Brothers was the property of Davidson Brothers. We find nothing in the record to indicate that the defendant was in any way misled by such variance. Section 7463 Wyo. C. S. 1920 provides that a variance between the statement in the information and the evidence in the name or description of any matter or thing whatsoever shall not be deemed ground for an acquittal unless the trial court shall find that such variance is material to the merits of the case or prejudicial to the defendant. We think there is a clear inference from the evidence that the defendant knew that Davision Brothers, mentioned in the information, and Davidson Brothers, referred to in the evidence and verdict, were the same. We agree with the trial court in its refusal to find that the variance was material or prejudicial; (Eggart v. State, 19 Wyo. 285, 116 Pac. 454; Harris v. State, 23 Wyo. 487, 153 Pac. 881.)

Some statement of facts which the jury may have found from the evidence is necessary to an understanding of some other questions. Shortly before July 23, 1919, neat cattle belonging to the various parties named as owners in the information were upon the open range near the defendant's ranch. July 25, defendant loaded at Fossil, Wyoming, for shipment to a commission firm at South Omaha, Nebraska, thirty-two head of cattle, all of which had been branded recently by defendant with brands owned or used by her, placed over older brands. Upon the arrival of the cattle at their destination, and before they had left the pens of the consignee, they were examined by an inspector of live stock whose duty it was to inspect all cattle arriving at that market from Wyoming. It was discovered then, and by later investigations, that the older brands were different

from the fresh brands, and that the former, in most instances, belonged to persons other than the defendant. The recently seared ears of the cattle raised the inference that the ear marks had been obliterated. Seventeen head, according to the testimony of the inspector, originally bore the brand of Davidson Brothers, with which he was familiar, and, discovering this, he notified the county attorney of Lincoln County of the result of his inspection, and ordered the cattle to be held for further investigation. In the meantime, on July 26, William Davidson, of Davidson Brothers, riding near Fossil, found two of the partnership cattle on which it appeared that the defendant's brand had been placed over that of Davidson Brothers, and learning that defendant had shipped a car of cattle the day before, he followed the car to Omaha, where he arrived soon after the cattle were unloaded. He there examined some twenty-six head of them. Eight head were taken to a packing-house, where they were killed and skinned in the presence of Davidson and the inspector, and when the inner sides of the hides, after removal from the animals, were examined, the old brands only could be discerned. There was evidence tending to prove that of the eight hides, four bore the brand of Davidson Brothers, two of Corless, one of Spencer and one of Lincoln Livestock Company. These hides were inspected by the jury at the trial, and doubtless furnished convincing evidence of the brands which they bore. The verdict found the defendant guilty of stealing three head owned by Davidson Brothers and one head owned by Lincoln Livestock Co.

The defendant admitted that the cattle shipped from Fossil had been recently rebranded by her, but claimed that the older brands on said animals were hers also. Her old brands, she says, were dim, and she rebranded upon the advice of her father, who had told her to ship no cattle except those upon which the brands were distinct.

Other incriminating circumstances we deem it unnecessary to rehearse.

It is urged that there was error in admitting in evidence records kept by railroad and stockyard employees showing the movements of the car of cattle from Fossil to South Omaha. Stated briefly, the evidence in which there was reference to such records was as follows:

The railway agent at Fossil testified that the records of her office showed that the cattle loaded there July 25 were put into car 45782; the manager of the stock yards at Cheyenne testified that his records showed that car 45782 arrived there July 26, when the cattle therein were unloaded, and on July 27 reloaded into car 35677, and the superintendent of the stock yards at Valley, Nebraska, testified that car 35677 arrived there July 29, when the cattle were unloaded, and on July 30 reloaded into car 1367. This testimony of these three witnesses was elicted by questions to which no objection was made, nor was there any motion to strike out the answers.

Over objection, an employee of the stockyards company at South Omaha testified that his record showed that thirty-two head of cattle were unloaded there July 30 from car 1317. The record itself was not introduced in evidence, and probably was used by the witness as a memorandum from which to refresh his memory, though the facts warranting such use do not clearly appear. There was received in evidence, also over objection, the way-bill of the shipment.

The defendant admitted the billing of 32 head of cattle to the commission company; their receipt by that company was proved by the unobjectionable and uncontradicted evidence of other witnesses, one a defendant's witness, an agent of the consignee, who identified tally sheets made by the inspector of livestock, stating that they had reference to the shipment of thirty-two head of cattle received July 30 by the consignee from defendant. Therefore, whatever may be said as to the right of the defendant to deny the inference that the cattle delivered were the same cattle that were billed, we are of opinion that there was no dispute of the bald fact that thirty-two head of cattle were shipped by her

from Fossil and the same number received by her consignee at Omaha; and, consequently, the admission in evidence of the testimony of the employee of the stockyards company and the way-bill, which tended to establish that fact, was not harmful.

It is contended that it was error to permit the jury to examine the hides which were taken from the eight head of cattle killed at South Omaha, for the reason that they were not sufficiently identified as having been taken from animals that had been shipped by defendant. We are of opinion that this inspection by the jury was properly permitted, and after what has already appeared from the foregoing statement of the facts, we believe the question requires but little discussion. From the facts proved it was the almost irresistible inference that the cattle received at South Omaha and examined there by the inspector and Davidson were the same cattle shipped by defendant. There was positive testimony that the eight head which were killed were a part of the cattle so examined, and like testimony that the hides exhibited to the jury were the ones that had been taken from those eight animals, with no change in the meantime of the marks or brands. In this connection it is argued that in finding the ownership of the cattle to be in the parties named as owners in the information was in disregard of the rule that one presumption or inference cannot rest upon another presumption or inference, citing State v. Potello, 40 Utah 56, 119 Pac. 1023. Without questioning the rule, we think the case at bar furnishes no example of its violation. If we understand the argument of counsel, it is that the presumption of ownership arising from proof of ownership of the older brands found upon the animals at South Omaha rests upon the inference that those animals were the same as the ones shipped from Fossil by defendant. We cannot accept this reasoning. The fact that the cattle discovered by the inspector at South Omaha were the cattle which had been claimed, possessed and shipped by defendant was inferred from facts which were proved. It then became important to the state to

prove the ownership of the property. This fact, of course, could not be inferred from the fact, previously inferred, that the defendant had claimed, possessed and owned them, but could be proved by any competent evidence tending to establish it, and was proved by evidence showing the fact of ownership of the original brands on the animals, which under the statute was *prima facie* proof of the ownership of the animals themselves. We see here no question of one inference resting upon another, but each inference or presumption rests upon its own facts.

The witness Davidson was permitted to testify that soon after the car of cattle was shipped by defendant he discovered on the range in the vicinity of Fossil four other cattle on which the Davidson Brothers' brand had been altered as he found it altered on the cattle discovered at Omaha, and that the defendant afterwards claimed them as hers. Two of these cattle were those discovered July 26, to which we have already referred, and the others were discovered a few days later. It is contended that the reception of that evidence, tending to show that defendant had been guilty of other criminal acts, was error. It is true that evidence of crimes other than that charged in the information may not be received for the purpose of leading to the conclusion that the defendant is a person likely from his criminal conduct or character to have committed the offense for which he is being tried. On the other hand, the mere fact that the evidence adduced tends to show the commission of other crimes does not render it inadmissible if it be relevant to an issue before the jury, and it may be so relevant if it bear upon the question whether the acts alleged to constitute the crime charged in the information were designed or accidental, or to rebut a defense that would otherwise be open to the accused. (17 R. C. L. 75; 16 C. J. 588-589; Note 43 L. R. A. (N. S.) 776; note 3 A. L. R. 1213; Smith v. State, 17 Wyo. 481, 101 Pac. 847.)

The defendant, admitting the recent branding and claiming it was done because her older brands could not be deciphered readily, presented to the jury the question wheth-

er, even though she did not own the cattle, she may not honestly have believed she did; that is, whether the act of misbranding was by intention or mistake. Evidence of a similar misbranding of other cattle was proper, not for the purpose of proving other crimes, but as bearing upon this question, and thus tending to prove the crime charged in the information. (Terr. v. Caldwell, 14 N. Mex. 535, 98 Pac. 167; State v. Morris, (Or.) 175 Pac. 668; Cannon v. State (Tex. Crim. Rep.) 208 S. W. 339.)

In a larceny case, evidence of the possession by defendant of goods other than those mentioned in the information may not be relevant unless it is sufficient to prove *prima facie* that such goods were stolen. It was so held in State v. Jones (Wyo.) 191 Pac. 1075. It is argued that the evidence under discussion was subject to objection on this ground, but we must hold otherwise. Conceding for our present purpose that it did not make a *prima facie* case of larceny of the four head of cattle, it was sufficient to prove *prima facie* the relevant fact sought to be established; that is, similar, wrongful instances of misbranding by defendant at about the same time. In cases like State v. Jones, supra, the evidence is inadmissible unless it be sufficient to prove another larceny; in this case it was admissible if it were sufficient to prove another misbranding.

The next question is the alleged insufficiency of the evidence to support the verdict. What has been said in treating another assignment of error expresses our view that the ownership of the cattle was satisfactorily established. That it was not proved that the cattle were taken feloniously is another alleged defect in the evidence. It seems to be contended that, to warrant a conviction, there should have been some different or additional evidence to prove that the cattle were lost by a felonious taking from the owner, that is, of the *corpus delicti*. Such a taking must, of course, be proved, but, as said in Dalzell v. State, 7 Wyo. 450, 53 Pac. 297, "the evidence relied upon to establish the *corpus delicti* in larceny is not necessarily, or indeed usually, distinct from that relied upon to identify the offender and

prove the guilty intent." · Quoting further from the same decision : ''The loss of and subsequent finding of the property does not prove, or in many cases tend to ·prove, the *corpus delicti;* that it ·was lost by a larceny. But· the loss and even imperfect identification of it in the possession of the accused, together with incriminating circumstances of misstatement and concealment may, as in this case, not only identify· the guilty person, ·but satisfactorily establish the *corpus delicti."* The case there considered presented no more pronounced instances of misstatement and concealment than· the attempted obliteration by defndant in this case of the owners' brands, and her claim afterwards that the cattle had always belonged to her. But, it is argued, the ·cattle may have strayed into the fields of the defendant and she, having thus innocently come into their possession, would not be guilty of larceny by reason of a subsequent appropriation· of them, because in such case the intention to steal at the time of the taking, which is an essential element of that crime, would be lacking. That the straying of range cattle into the fields of another works such a change in possession that the owner of the field, who appropriates them may not be convicted of larceny, is a proposition which we are not willing now to concede, and upon which we need not pass in this case as it is not presented by the evidence, nor consistent with any theory advanced at the trial. The defendant herself testified that she "gathered" the cattle, brought them home and rebranded them. We are of the opinion that there was ample evidence to establish the fact that the cattle were taken from the open range, and were not in defendant's possession or custody until she took them with the intention of stealing them.

It is argued also that the defendant's possession was not recent within the meaning of the rule, often invoked in larceny cases, that certain inferences may be drawn from the recent, unexplained possession of stolen property. Such inferences, and the grounds upon which they may be based, are important in those ·cases where the possession of the stolen property by the defendant is relied upon to estab-

lish the fact that he was the person who took it. But we fail to see how this rule had any place in this case, and evidently the trial court was of the same opinion, as it refrained from giving any instruction upon the subject. The circumstances attending the taking or gathering by defendant of the cattle which were shipped from Fossil were not in dispute, and the only issues under the evidence were: (1) did those cattle belong to defendant, or to the persons claimed by the state to be the owners; and, if that issue were decided in favor of the state (2) did defendant take them by mistake, or feloniously? No inference that could aid the state upon those issues could be drawn from the fact of defendant's possession, whether recent or remote, as possession by her was perfectly consistent with her defense.

It is also claimed that the evidence was insufficient to prove that the cattle found by the jury to have been stolen were all taken at the same time. It was the theory of the state that the defendant was engaged in one continuous transaction consisting of the gathering, branding and shipping of cattle belonging to others; that all of her acts during that transaction were with the same intention and set in motion by a single impulse, and that in the shipping of the cattle, which was the result of the transaction, there was but one "carrying away," and but one larceny. The facts in support of this theory were, we believe, satisfactorily established. We do not decide that such facts would, in cases where the property of different owners is taken, necessarily result in only one larceny. Let it be conceded in this case that the time of taking from the range must be the determining consideration upon the question whether there was one or several larcenies, yet we think the evidence was sufficient to support the finding of the jury that the cattle mentioned in the verdict were taken at the same time and place. It was shown by the state that the defendant had stolen a number of cattle all of which were taken probably within a certain brief period. The defendant alone had knowledge of the exact time when any particular animal was taken from the range; her evidence failed to disclose

this knowledge, and she thus declined to present any issue which might thus have been raised. Nor did she, by objection, motion or requested instruction at the trial suggest to the court that the state should be required to elect to ask a conviction for the stealing of some particular part only of the property. (See West v. Com. (Va.) 99 S. E. 654.) The trial upon the theory that there had been only one larceny did not, we think, prejudice the defendant in making her defense, and the nature of the crime was unaffected by the number of cattle found by the jury to have been stolen.

· The charge of the court was made up of seventeen, separate, numbered instructions, and there is nothing in the bill of exceptions to point out at whose request any of them were given. The only exception to the instructions was "to the giving of all instructions by the court on behalf of the prosecution on the ground that they do not give the law applicable to the case." In any view which we can take of this exception it is insufficient as the foundation of an assignment of errors here. It was evidently directed at some group of instructions; possibly, to the whole of the charge. An aggrieved party must point out definitely and particularly the ruling of which he complains, and an exception to the giving of a group of instructions will be disregarded if any one of the group be correct. We consider this general principle settled in this state by Dickerson v. State, 18 Wyo. 440, 473, 479, 111 Pac. 857, 116 Pac. 448. In that case the court considered the sufficiency of assignments of error in a motion for a new trial, but the reason for requiring particularity in objections and exceptions applies with perhaps greater force in the present case, where we have to consider the sufficiency of the exceptions at the time of the adverse ruling. (14 R. C. L. 809-811; 17 C. J. 86.)

·. The rule requiring timely and definite exceptions to instructions has been relaxed in criminal cases in this state in some particulars. In cases where the punishment was capital, the court has considered the entire record, although it did not disclose objections and exceptions, and granted a new trial if, from such examination, it determined that

there were such fundamental and prejudicial errors as had deprived the defendant of that fair and impartial trial guaranteed to him by the constitution, and amounting to a denial of justice. (Parker v. State, 24 Wyo. 491, 161 Pac. 552; Ohama v. State, 24 Wyo. 513, 161 Pac. 558.)

In cases where the punishment imposed is less than capital, the general rule requiring that there be proper exceptions has been adhered to (Dickerson v. State, supra; Loy v. State, 26 Wyo. 381, 185 Pac. 796), except that in Palmer v. State, 9 Wyo. 40, 59 Pac. 793, 87 Am. St. Rep. 910 it was held that where the instructions as a whole present an erroneous view of the law as applicable to the facts of the case, a general exception to the charge is sufficient.

We have examined and considered the charge of the court for the purpose of determining the questions (1) whether as a whole it presented an erroneous view of the law as applied to the facts, and (2) whether it may be said that all of any group of instructions to which defendant's exception may reasonably be considered to have been directed were erroneous. We find that both questions must be answered in the negative, and, therefore, there is no exception in the record which would justify the discussion of any specific instruction. We repeat, the issues in the case were simple, and they were no doubt well understood by the jury. And in view of that and the convincing character of the evidence pointing to defendant's guilt, we are satisfied that the verdict was not the result of any erroneous statements in the instructions now criticized by counsel.

There remain for consideration some questions in regard to the sufficiency of the verdict, which reads:

"We, the jury duly impaneled and sworn in the above entitled case, do find the defendant, Annie Richey, guilty of stealing livestock, the property of, viz: 3 of Davidson Bros. and 1 of Lincoln Livestock Co. as charged in the information, and we further find the value of the property stolen to be a total of $200.

"H. E. Robinson, Foreman."

Without undertaking to decide whether any, and, if any, how much, of the verdict might be regarded as surplussage, we shall consider it as a whole to determine its sufficiency.

A verdict must be construed with reference to the information and the trial, and if, when so construed, it be responsive to the issues, and the court can understand the true intent and meaning of the jury, it is good. (Ackerman v. State, supra; Long v. State, 15 Wyo. 262, 88 Pac. 617; People v. Patrick, 277 Ill. 210, 115 N. E. 390; Kendall v. State, 183 Ind. 162, 105 N. E. 899.)

It is contended that the verdict is defective in three particulars.

First, that it refers to the crime as "stealing live stock" instead of stealing neat cattle. As neat cattle are live stock, and the only live stock mentioned in the information or the evidence, there is no doubt that the jury intended to find the defendant guilty of the crime charged.

Second, that the language "3 of Davidson Bros. and 1 of Lincoln Livestock Co." is indefinite. We think it too clear to require discussion that the language means "3 head" of the kind of livestock mentioned in the information and the evidence.

Third, that the finding of a value of $200 is insufficient to comply with the statute (§7549 Wyo. C. S. 1920) requiring that the jury find and declare the value of the property. The dollar is the unit of value in this country, and the omission of the dollar sign or word "dollars" in a verdict does not render it indefinite. (Ex parte McLean, 84 Kan. 852, 115 Pac. 647, 35 L. R. A. (N. S.) 653, and note.) Here the jury not only omitted the dollar sign, but placed before the figures another sign which we understand, when used, signifies number. However, we think it clear that the jury did not intend that that sign should have such meaning in this instance. The only evidence in regard to value tended to support the allegations of value in the information, that is, that the cattle were worth $50 each. The statement of value in the verdict, if construed to mean $200.00, is consistent with the undisputed evidence, and to

construe it otherwise would be contrary both to precedent and common sense.

As we find no error in the record the judgment will be affirmed.

*Affirmed.*

Potter, C. J., and Blume, J., concur.

ON PETITION FOR REHEARING

Potter, Chief Justice.

The judgment of the district court upon a verdict finding plaintiff in error, defendant below, guilty of larceny of certain neat cattle having been affirmed by this court (see 201 Pac. 154), she has filed a petition for rehearing, stating as grounds therefor that the conclusions of this court are erroneous in the following particulars:

(1). In holding the evidence sufficient to sustain the verdict. (2). In sustaining the rulings of the trial court admitting the testimony relating to the discovery upon the range of other cattle upon which the brand of Davidson Bros. had been altered in the same manner as the brands upon the Davidson cattle alleged to have been stolen, and that the defendant claimed them as her cattle. (3). In refusing to review the instructions complained of, for want of proper exceptions, particularly instructions numbered $8\frac{1}{2}$, 9, and $9\frac{1}{2}$.

The case was ably presented at the original hearing, both by brief and oral argument, and all the points now insisted upon in support of the grounds assigned for a rehearing were then urged as grounds for reversal. And they were considered by the court and discussed as fully as deemed necessary in the former opinion. We have, however, carefully considered the petition and the brief filed in its support, but are not convinced that a rehearing might result in a change of our views upon any of the questions presented, or the conclusion that the judgment should be affirmed.

· The point upon which it is again contended that the ver-
dict is not sustained by sufficient evidence is that there is
no evidence of a taking of the cattle within the meaning
of the larceny statute, for the reason, as counsel contend,
that it appears from the evidence that the cattle went upon
the lands of the defendant from the open range, whereby
she obtained possession of them innocently, so that upon
the principle that there must be an intent to steal at the
time of the taking, in order to constitute the crime of lar-
ceny, the crime was not established by the evidence in the
case.    But, as intended to be and as we think was shown in
the former opinion, there is nothing in the case rendering
the principle relied on applicable.

While it appears from the evidence that cattle of various
owners· upon the open range in the vicinity of the defend-
ant's ranch would occassionally, or perhaps habitually,
drift or stray upon certain lands belonging to that ranch,
in search of water which was accessible there, it does not
appear that any of the cattle alleged and found to have been
stolen, or any cattle of other owners, came into the posses-
sion of the defendant in that manner, even if it might be
possible, under the law, that she could have obtained pos-
session of such cattle lawfully or innocently, by reason of
the fact that they had strayed upon such lands; a point
which, as stated in the former opinion, we are not willing
to concede, though it is a question which it was and is not
necessary to decide in this case.    And it may be said in
addition to the facts stated in the former opinion in dis-
cussing the question that instead of claiming that she had
innocently acquired possession of· the cattle in question she
expressly denied in her testimony that she had ever shipped
or had ever seen the cattle from which the eight hides pro-
duced by the prosecution had been·taken, and which were
the cattle claimed to have been· stolen, but that the cattle
shipped by her at the time in question were her own, that
she had, handled them since they were calves, and rode
among them every day.    And she also testified that the 32
head so shipped by her were all her cattle, and that there

were no Davidson cattle or cattle of any other owner named in the information in her said shipment.

With reference to the second ground of the petition, challenging the correctness of our conclusion as to the admissibility of the testimony concerning other Davidson cattle, showing a similar change of brands discovered on the range in the vicinity of the station from which it was claimed by the prosecution the cattle alleged to have been stolen had been shipped by the defendant, and soon after that shipment, we think our reasons for holding the testimony to have been properly admitted were sufficiently stated in the former opinion and we remain of the opinion that the point was correctly decided. But it seems to be contended in the present brief that the fact that the defendant had brought a suit in replevin for the possession of such other cattle, after the discovery of them upon the range by the witness Davidson and his taking possession of them, rendered the testimony inadmissible for the reason that the ownership of said cattle was thereby shown to be in dispute in a civil action pending in the district court at the time of the trial of this case. The fact that such replevin suit had been brought was not mentioned in the former opinion for the reason that it was not deemed material since it was stated that the defendant claimed such cattle as her own; and it is not now perceived that the fact that the defendant had brought such replevin suit, which was first testified to by the witness Davidson in connection with his statement that the defendant claimed the cattle as her own, could operate in any way to render the testimony objected to inadmissible. Whether she replevied them or not, the fact that she claimed to own them would present the fact of a dispute as to the ownership, but clearly, we think, that would not destroy the admissibility of the testimony. Without the fact that the defendant claimed the other alleged misbranded cattle the evidence would not have been admissible, for the cattle were not shown to have been found in her immediate personal possession, but at large upon the range.

The fact is, as shown by the record, that this testimony was offered for the purpose of showing that other cattle bearing the Davidson Brothers brand, changed in the same manner as the brand upon the alleged stolen cattle, were claimed by the defendant as her own cattle. It appears that the witness Davidson was asked whether or not on or about July 25, 1919 (the date of the defendant's shipment, which it was claimed included the cattle alleged to have been stolen) he discovered any cattle on the range in the vicinity of Fossil (the station from which said shipment was made) with the D Bar D brand thereon (the Davidson brand) altered, as he had found it altered on the alleged stolen cattle. The question was objected to generally as incompetent and irrelevant and for the further reason that it was an attempt to connect the defendant with a distinct and separate offense. Thereupon the prosecution offered to prove that the defendant claimed the ownership of at least one head of cattle found within a day or two after said shipment with the Davidson brand altered similar to the alteration found on the hides of the alleged stolen cattle.

The offer being objected to as an undertaking to prove a separate offense, the attorney for the state then said: It is offered as a circumstance to show that the defendant claims to be the owner of cattle where the said Davidson brand had been changed. The objection being overruled the witness answered: "Yes, sir, I did," and he further said that he had found four head out there on the range with D Bar D changed; that they were left in "our charge" at the ranch by the sheriff; and that the defendant had claimed these cattle as her own, and had replevined them. It further appeared that the Davidsons, upon giving a redelivery bond in the replevin action, had retained possession of the cattle.

It is argued in this connection that the question of the title to the cattle being in dispute and litigation between the Davidsons and the defendant, the ownership could not be determined on the trial of this case. Conceding that to be true, it does not destroy the relevancy of the testimony to

show that other cattle claimed by the defendant as her own had been found at or about the time of the shipment of the cattle claimed to have been stolen, which showed the same change of the Davidson brand as that shown upon the alleged stolen cattle. The defendant, as was her right, met that evidence by testifying that the new brands upon those other cattle were placed over old brands of her own, and not over a Davidson brand, and in this she was corroborated by another witness, who identified the cattle, after having seen them at the Davidson ranch, by describing them other than by the brands, as cattle belonging to the defendant which he had cared for the winter before, and that the Davidson brand was not upon said cattle, but that they bore at that time a brand which was being used by the defendant, over which the new brands appeared to have been placed. All the testimony on this question was for the consideration of the jury, together with the other evidence in the case, in determining whether the defendant was or was not guilty of the crime charged in this case.

It is to be remembered that the theory of the prosecution and the effect of its evidence was that the Davidson cattle alleged to have been stolen by the defendant were shipped by her from Fossil, in this state, to South Omaha, Nebraska, after the Davidson brand upon each head of said cattle had been recently changed, and the material point was whether such cattle had been misbranded and shipped by the defendant. And we see no good reason to doubt that it was relevant upon that theory of the case for the prosecution to show that other cattle of the same owner, claimed by the defendant as her cattle, had been discovered upon the range at or about the same time with the owner's brand changed in the same manner.

It is argued that it is not shown that said other cattle were stolen. We are not convinced that the testimony of the witness Davidson as to the change of the brand upon said cattle, under the circumstances, might not properly be held sufficient to show, at least *prima facie,* that they had been stolen. In the former opinion, and for the pur-

pose of that decision, we said that conceding that it was not sufficient to make out a *prima facie* case of larceny of said four head of cattle, it was sufficient to prove the relevant fact sought to be established, viz., similar wrongful instances of misbranding by defendant at about the same time; having reference to the stated purpose of the offer of the testimony as a circumstance to show that defendant claimed to be the owner of other cattle upon which the Davidson brand had been altered in the same manner as the brands upon the cattle charged in this case to have been stolen. It is argued also that the testimony of the witness Davidson was vague and uncertain, and for that reason should have been excluded. We do not think so. He had previously described particularly the manner in which the Davidson D Bar D brand had been changed upon the cattle of that brand alleged to have been stolen, and his testimony admitted as to those other cattle was to the effect that the brands upon them had been changed in the same manner.

It seems to us that the greater part of the argument in the brief upon this question relates to the sufficiency of all the evidence, that for the defense as well as for the prosecution, as to these other four head of cattle to show that they were misbranded D Bar D cattle, or were cattle belonging to the Davidson Brothers. That was a question for the jury, and was no doubt argued to them upon the evidence, but it cannot affect the question of the admissibility of the testimony that was objected to. We doubt if it has ever been held, at least no case has been cited to that effect and we have found none, that testimony otherwise admissible offered to show the finding of other recently stolen property in the possession of a defendant accused of larceny is rendered inadmissible by the fact that such defendant claims or had claimed at the time of the finding of such property in his possession or under his control that he owned the same.

A situation somewhat similar to that in the case at bar was presented in the recent Texas case of Mueller v. State, 215 S. W. 93. That was a prosecution for larceny of cattle, and the other cattle in that case were found in the same

field with the cattle alleged to have been stolen, and were identified as cattle previously stolen from the same owner. This evidence as to such other cattle was introduced in rebuttal of testimony on the part of defendant that the cattle charged to have been stolen and all the other cattle in the same field were owned in part by the defendant, and in part by the owner of the field, who was also charged with the theft. The appellate court held that the evidence was admissible, not only for the purpose of rebutting the evidence offered by the appellant, but also for the purpose of showing lack of innocent connection on the part of the appellant with the cattle charged to have been stolen in the case then before the court, and for the purpose also of showing his intent with respect thereto, or as developing the *res gestae* or as proving a legitimate chain of circumstances affecting the guilt of the appellant. And the defendant's evidence in that case was to the effect that all of the cattle in the field had been raised by the owner of the field, the other party charged with the theft and that some of them had been sold by him to appellant.

We think it proper further to say, with reference to the second ground of the petition, that counsel is mistaken in supposing that the case of Commonwealth v. Coyne, 228 Mass. 269, 117 N. E. 337, 3 A. L. R. 1209, was cited in our former opinion. It is stated in the brief in support of the petition that said case is cited in the court's opinion, and it is then commented upon by counsel as not in point upon the question. The case was not cited by this court, but we did cite "Note, 3 A. L. R. 1213," which happens to be a note supplemental to a report of the case of Commonwealth v. Coyne. But the note only was cited, and it was cited because of the many cases referred to and considered therein upon the general subject; and that note is upon points expressly distinguished from the proposition upon which the decision in the said reported case was based. Nor was it supposed that the cases which we cited upon the question were all that might be cited in support of the conclusion stated, or that they were even the strongest cases affirming

and applying the principle upon which the question was decided. But the citation of individual cases were purposely confined to cases showing an application of the principle to facts similar to those in the case at bar.

Under the third ground stated in the petition for rehearing, it is contended that the instructions complained of are so fundamentally erroneous as to vitiate the entire charge and to require a consideration thereof in the absence of any exception. And in this connection it is argued, first, that the general exception is substantially the same as the exception in Palmer v. State, 9 Wyo. 40, cited in our former opinion as holding that where the charge as a whole presents an erroneous view of the law as applicable to the case a general exception to the charge is sufficient. In that case the court said that the instructions for the state as a whole presented an erroneous view of the law as applied to the facts of the case. But in the case at bar we said that the charge as a whole did *not* present an erroneous view of the law as applied to the facts. And we added to that that we were satisfied that the verdict was not the result of any erroneous statements in the instructions criticized by counsel.

In support of the proposition that without sufficient exception the alleged errors in the instructions should be considered, the rule stated in Parker v. State, 24 Wyo. 491, 161 Pac. 552, is relied on, viz: "However, if it clearly appears from the record that such fundamental and prejudicial error has been committed as to amount to a denial of substantial justice, or to deprive the defendant of a fair trial, the court should not hesitate to reverse the judgment and grant a new trial, although proper exceptions were not taken at the time." That was said in a capital case, and as the concluding part of a discussion of the attitude of appellate courts in such cases, showing that they have inclined to the view that in such cases it is their right and duty to examine the record to ascertain whether or not the defendant has been deprived of his constitutional right to a fair and impartial trial, but that the judgment should then be reversed

only where it appears that such fundamental errors have been committed as to deprive defendant of his substantial rights, or that the ruling, decision or other matters complained of have been prejudicial to the defendant; and especially so where proper exceptions have not been timely taken or preserved. And in another capital case decided at the same term, Ohama v. State, 24 Wyo. 513, 161 Pac. 558, this court, after holding, upon the facts in that case, that for the reasons stated in the Parker case the rule as to objections and exceptions should not be strictly enforced, said, concerning the necessity of proper exceptions generally to procure a review of alleged errors:

"The rule of practice is a salutary one in most cases and should not be departed from even in criminal cases except in a case like this, where deemed necessary to the security of defendant's right to a fair trial or the just administration of the law."

But if it should be conceded that the rule requiring proper exceptions might properly be departed from in this case under the conditions stated and considered in the Parker and Ohama cases, we are unable to agree with counsel in their contention that either of the instructions complained of was fundamentally erroneous or necessarily prejudicial, or announced an incorrect theory affecting the entire charge and the validity of the trial. The contention, while not confined to any one of the instructions complained of, is presented with special insistence as to the ninth instruction, and with reference to the concluding words of that instruction, viz: "You are not at liberty to disbelieve, as jurors, if you believe as men; your oath imposes on you no obligation to doubt where no doubt exists if no oath had been administered." The entire instruction was as follows:

"The court further instructs the jury, as a matter of law, that the doubt which the juror is allowed to retain in his own mind, and under the influence of which he should frame a verdict of not guilty, must always be a reasonable one. A doubt produced by undue sensibility in the mind of any

juror, in view of the consequences of his verdict, is not a reasonable doubt, and a juror is not allowed to create sources or materials of doubt by resorting to trivial and fanciful suppositions, and remote conjectures as to possible state of facts, differing from that established by the evidence; you are not at liberty to disbelieve, as jurors, if you believe as men; your oath imposes on you no obligation to doubt where no doubt exist if no oath had been administered.''

An instruction in the same words, except that in the last sentence the word ''exist'' was preceded by ''would'' was condemned by this court in Robinson v. State, 18 Wyo. 216, 106 Pac. 24, because of the omission from it in the first sentence of the clause now objected to of the words ''from the evidence'' immediately preceding the words ''you believe as men.'' If the words omitted had been included in said clause of the instruction, the first sentence thereof would read ''you are not at liberty to disbelieve as jurors, if from the evidence you believe as men.'' The court said that the language of the instruction in the Spies case (Spies v. People, 122 Ill. 1, 12 N. E. 865, 17 N. E. 893, 3 Am. St. Rep. 374) was attempted to be followed, and further:

''Whatever force there might be in the adoption and approval of the instruction in the Spies case by eminent courts, it is not persuasive as upholding the instruction given in the case before us. Here one of the essential elements of that instruction is lacking, viz: that the belief in the guilt of the accused sufficient to convict must be based upon the evidence in the case. A lack of evidence to prove such guilt cannot be supplied by what a juror knows or believes, regardless of his oath. Under our procedure he is required to base his verdict solely upon the evidence and law as given him by the court.'' And the judgment in the Robinson case was reversed because of that instruction and another.

By the very clear weight of authority, such instruction, though disapproved and concerned either as useless and unnecessary, or as liable to mislead the jury, is held not to be

either fundamentally erroneous or inherently prejudicial, and not reversible error unless appearing to be prejudicial in the particular case. And such instruction, when including the aforesaid omitted words "from the evidence" in the sentence above indicated, is approved in a number of jurisdictions. (16 C. J., sec. 2406, p. 995 and cases cited; note in 21 Ann. Cas. 564 to McQueary v. People, 48 Colo. 214, 110 Pac. 210.) The instruction in the Colorado case last cited was in substantially the same words as the instruction in this and the Robinson case, and omitted the words "from the evidence" in the sentence above referred to. The instruction was sustained, the court saying, however, that it did not wish to be understood as commending it, but that on the contrary, it regarded it as useless because conveying no information which men of ordinary intelligence do not possess. The same instruction is held not to be erroneous also in Kansas (State v. Morrison, 72 Pac. 554), California, (People v. Clark, 192 Pac. 521), and Michigan (Dodge v. Reynolds, 135 Mich. 692).

Such an instruction is said to have originated with the language of Chief Justice Gibson in Comm. v. Harmon, 4 Pa. St. 273, followed in Fife v. Commonwealth, 29 Pa. St. 429, the latter case holding that the instruction "although liable to be misunderstood by a jury, is not erroneous as a matter of law." In McMeen v. Comm. 114 Pa. St. 300, it was said by Mr. Justice Paxson, delivering the opinion of the court, referring to the holding in the Fife case: "Yet even this ruling, it appears to me, requires some qualification. If it does mislead the jury, or is so used that it is likely to mislead the jury, we regard it as error. But in the case at bar, as in Com. v. Harmon, the language used was used in connection with the evidence. Thus, the learned judge said in a sentence immediately preceding the one assigned as error, 'This reasonable doubt is not one which the jury will reach out for to relieve them from finding a verdict of guilty, but such a doubt as is left from the failure of the evidence to convince your minds of the guilt of the defendant.' Undoubtedly, a jury should be convinced

*from the evidence* where he would be convinced as a man, and
when the language is quoted in this way, we see no tech-
nical error. But as was said in Fife v. The Com., supra,
it is an expression that is liable to mislead a jury, and for
my own part I could wish that it had never found its way
in the books. Severed from its connection it is easy to see
how a jury may be misled. There are many cases in which
jurors, as men, may believe a person on trial for a crime
to be guilty, when the evidence in the case would not war-
rant a conviction.''

In a later Colorado case, Sarkisian v. People, 56 Colo.
330, 138 Pac. 26, the same instruction was given as in the
Robinson case and in this. The judgment was reversed up-
on other grounds, but after announcing such reversal, Gar-
rigues, J., delivering the opinion of the court, and speaking
for two other justices, said that he thought the instruction
bad with the words "from the evidence" omitted, though
in view of what was said in McQueary v. People, supra, it
may not be reversible error where the jury are told in some
other proper instruction that they are to find from the evi-
dence, and he further said that he believed the instruc-
tion proper when correctly given. In a still later Colorado
case, however, Highley v. People, 177 Pac. 975, the in-
struction was expressly condemned and held to be pre-
judicial error, because it did not refer to the evidence, the
Robinson case being quoted from and followed. And the
court seems to have been led to declare the instruction to
be reversible error by the continued practice of district at-
torneys and trial courts to ignore the court's condemna-
tion of it. In several instructions in the case at bar the
jury were told that their verdict must be based upon the
evidence; particularly in the 8th, which states that it is
incumbent upon the prosecution to establish all the mate-
rial allegations of the information by competent evidence
beyond a reasonable doubt, and in another instruction on
reasonable doubt, the 14th, it is said among other things
that ''it is a state of the case which, after the comparison
and consideration of all the evidence leaves the minds of

the jurors in that position that they cannot say they feel an abiding conviction, to a moral certainty of the truth of the charge," that "all the presumptions of law, independent of evidence, are in favor of innocence," and that "the evidence must establish the proof of the fact to a reasonable and moral certainty;" and further, by another instruction stating that "to warrant a verdict of guilty at your hands, the defendants must be proven guilty so clearly and conclusively that there is no reasonable theory upon which they can be found innocent when all the evidence of the case is considered together."

The instruction is condemned in West Virginia, but held not to be reversible error unless found to have been prejudicial. Thus it was said in State v. Young, 82 W. Va. 714, 97 S. E. 134: "We have had occasion recently to comment upon the propriety of giving such an instruction to the jury. In the case of State v. Worley, 82 W. Va.——, 95 S. E. 56, it was condemned and in the cases of State v. Snider, 81 W. Va. 522, 94 S. E. 981, and State v. McCausland, 96 S. E. 938, decided at this term of this court, it was disapproved. In each of these cases, there was another ground upon which reversal was necessary, and it was not held that the giving of this instruction would justify a reversal if some other ground did not exist therefor. Nor do we say in this case that this alone would justify setting aside the verdict. There may be cases where the giving of such an instruction would require the reversal of the judgment, while there may be others where it can be said that no injurious effects could have resulted therefrom." In State v. Price, 83 W. Va. 71, 97 S. E. 582, the same court said: "While we have never reversed a conviction upon this ground alone, in the case of State v. Young, 97 S. E. 134, decided at this term of this court, we expressed the opinion that there might be cases in which the giving of this instruction would compel us to reverse it. Certain it is that it can accomplish no purpose but a mischievous one, and in no case should it be given." And it was said by the same court in the later case of State v. Ringer, 100 S. E.

413: "We do not understand why counsel and some of the trial courts persist in the use of this instruction   *   *   *. The giving of this instruction always imposes upon us the burden of determining in the particular case whether the party resisting it has been prejudiced thereby; not always an easy deduction, and one which the court ought not to be called upon to determine. In this case we have concluded that the judgment must be reversed upon another ground, and we are relieved thereby from determining whether the instruction was prejudicial."

We think it is disclosed by this review of the authorities that such an instruction is not generally regarded as fundamentally erroneous, or inherently or necessarily prejudicial, even by the courts condemning or disapproving it, and that it is reversible error only when it appears to have been prejudicial, and that in several jurisdictions it is approved as a correct and proper statement of the law. And it follows that the error in giving it is not of such a character as to exclude it from the rule requiring timely and definite exceptions as a condition to the consideration of alleged errors by a reviewing court.

While we need not, therefore, consider the alleged error in the instruction, we have above referred to or quoted the remarks of other courts condemning it, for the purpose partly of discouraging its use by trial courts in this jurisdiction, even in the form approved in the Spies case, since it may mislead the jury or tend to do so and become thereby prejudicial error, and in any event, as declared by some of the courts, though it may not be error, it is useless and unnecessary, and, when given, may afford an opportunity to bring the case before an appellate court for review, when that might not be justified upon any other ground. (People v. Whitney, 53 Cal. 421; People v. Clark, supra; McQueary v. People, supra.)

We think it unnecessary to discuss the other instructions complained of, further than to repeat that the error, if any, in giving them, is not such as should be considered in the

absence of a proper exception.  For the reasons stated we are constrained to deny the petition for a rehearing.

*Rehearing Denied.*

Kimball and Blume, J. J., concur.