## STATE v. JONES

(No. 971; Decided September 1, 1920; 191 Pac. 1075.)

JURY—CHALLENGES—WAIVER OF CHALLENGE—CRIMINAL LAW—WHEN EVIDENCE OF SIMILAR CRIME ADMISSIBLE.

1. The trial court committed reversable error in allowing the prosecution an additional peremptory challenge after it had waived its fourth and last challenge, and after the defendant had exhausted all his peremptory challenges, the terms of the statute (Sec. 6205 C. S. 1910) being mandatory.

2. Where it is competent for the prosecution to prove other crimes similar to the one charged, the evidence as to the other similar crimes must at least make out a prima facie case that such other crimes have been committed by the defendant;

3. In a prosecution for grand larceny, evidence as to articles found with those charged to have been stolen, should not have been admitted since there was no evidence that such

other articles were ever stolen, and the testimony with
reference thereto could have served no other purpose than
to have prejudiced the jury against the.defendant.

APPEAL from the District. Court, Natrona County; HON.
C. E. WINTER, Judge.

John Jones was convicted of grand larceny and sentenced
to a term in the penitentiary. From this judgment and sen-
tence defendant appeals. The facts are stated in the opinion.

*Hagens, Stanley & Murane,* for Appellant.

The Court erred in allowing the prosecution a peremptory
challenge after defendant's challenges were exhausted, the
prosecution having waived its fourth peremptory challenge;
this was a violation of Section 6205 C. S. 1910; it was
reversable error; (Fouch v. State, 45 S. W. 678; Williams
v. State, 39 S. W. 709; Gravely v. State, 64 N. W. 452;) the
right of peremptory challenge given the state is statutory
and cannot be enlarged in interpretation; (U. S. v. Shackel-
ford, 15 L. Ed. U. S. 495;) The court erred in refusing to
instruct the jury on the question of accomplice, it being de-
fendant's contention that the witness Hie was shown by the
testimony to have been an accomplice in the larceny of the
goods in question; the Court erred in giving instruction
No. 8 with reference to proof of intent which was an inva-
sion of the province of the jury; The court erred in permit-
ting the admission of a mass of testimony with reference
to other goods, a tool chest, a cook stove and a quantity of
furniture which was given in such a way as to create an in-
ference that defendant had something to do with its having
been stolen from the railroad company, altho no proof that
said goods were stolen was offered; it was improper to admit
evidence in this case of similar crimes; if it had been proper
to do so at all, it could only be done where the evidence
was sufficient to show that the crimes similar to the one
charged had been actually committed by the defendant;
(Telton v. State, 132 S. W. 480; Van Nort v. State, 124 S.
W. 654; State v. Hide, 136 S. W. 316; State v. Humason,

32 Pac. 111; Myers v. State, 108 S. W. 392; Com. v. McGarvey, 165 S. W. 973; State v. Brown, 134 Pac. 623; State v. Gottfredson, 64 Pac. 523; State v. Smith, 106 Pac. 797; Johnson v. State, 123 S. W. 1105; McIver v. State, 60 S. W. 50; Bowman v. State, 155 S. W. 139; People v. Geyer, 90 ME. 48; People v. Santagata, 114 N. Y. S. 320; Hawkins v. State, 64 S. E. 289) ;

*W. L. Walls,* Attorney General, for Respondent.

It is conceded that the trial Court committed error in allowing the prosecution to exercise an additional peremptory challenge after both sides had exhausted their peremptory challenges allowed by the statute, (6205 C. S. 1910;) under the statute, defendant was entitled to have the last peremptory challenge; (People v. Durant, 116 Cal. 179; State v. Dalton, 69 Miss. 611;) it was also erroneous to receive evidence of similar alleged crimes, there being no statement in the record of the purpose for which this evidence was offered, and no instruction requested, or given by the Court to the jury in regard to the matter; the result was that the evidence served to discredit the defendant in the eyes of the jury and was prejudicial to his rights; the refusal of the Trial Court to instruct the jury on the subject of an accomplice seems to be proper, the record not disclosing any testimony from which the jury could predicate a conclusion that there was an accomplice.

TIDBALL, DISTRICT JUDGE.

The defendant, John Jones, was convicted by the verdict of a jury of grand larceny, and sentenced to a term of years in the State Penitentiary. From this judgment and sentence defendant appeals to this court. The alleged errors, while numerous, may all be considered under two heads:

1. That the trial court erred in allowing the state to exercise a peremptory challenge after the State had waived its fourth and last peremptory challenge, and after the dedendant had exhausted his peremptory challenges.

2. The trial court erred in the admission of evidence relating to the taking by defendant of other articles, at different times, than those charged to have been stolen in the information.

At the time of the argument of the case in this court, the Attorney General stated that in his opinion the trial court erred in both particulars above stated, and that the defendant should be granted a new trial, but requested that this court fully consider the matter before rendering a decision. That this court has done, and has arrived at the same conclusion as did the Attorney General.

1. It appears from the record that after the defendant had exercised his sixth peremptory challenge in the empanelling of the jury, the State waived its fourth and last peremptory challenge. Thereupon the defendant exercised his seventh peremptory challenge, excusing Juror Henry. Juror Howland was then called in Henry's place. Both the State and the defendant passed Howland for cause. Defendant then exercised his eighth and last peremptory challenge, excusing Juror Mahoney. Juror Fanning was then called and excused for cause. Juror Wagner was then called in Fanning's place and was passed for cause by both sides. The State then, over the objection and exception of defendant, was permitted to exercise a peremptory challenge, excusing Howland. Juror Kraus was then called in place of Howland and passed for cause by both sides; and the Court then announced that all challenges having been exhausted, the jury should be sworn to try the case.

The statutes of Wyoming provide (Wyo. C. S. 1910, Section 6205):

"Sec. 6205. The defendant may challenge peremptorily, in capital cases, twelve jurors, in other felonies eight jurors, and in misdemeanors four jurors. The prosecution may challenge peremptorily, in capital cases, six jurors, in other felonies, four jurors, and in misdemeanors two jurors; and the number of peremptory challenges so allowed to the prosecution shall be multiplied by the num-

ber of defendants on trial in each case. Each defendant shall be allowed his separate peremptory challenges. The peremptory challenges shall be alternately in the following order: The prosecution may challenge one juror for each defendant then on trial; then each defendant may challenge two jurors; then the prosecution may challenge one juror for each defendant then on trial; then each defendant may challenge two jurors, and the same shall continue in this order as near as may be until the challenges shall all be exhausted or the jury accepted."

It will thus be seen that the trial court did not follow the requirements of the statute either as to the number or the order of peremptory challenges allowed to the prosecution, in that the trial court allowed the prosecution to exercise a peremptory challenge after it had waived its fourth and last peremptory challenge, and after the defendant had exercised all his peremptory challenges. The waiver of a challenge exhausts that challenge the same as though it has been used. Some cases hold that such a waiver waives only as to those jurors then in the box, but that such challenge may be exercised as to jurors called after the challenge is waived. Those cases, however, are decided, so far as we are able to discover, under statutes different from ours, or under facts different from those presented in the case at bar. See State vs. Vance, 29 Wash. 435, 70 Pac. 34; State vs. Sloan (Mont.), 22 Mont. 293, 56 Pac. 364; State vs. Peel, 23 Mont. 358, 59 Pac. 169, 75 Am. St. Rep. 529; and The People vs. Montgomery, 53 Cal. 576. In criminal cases especially, a statute prescribing the manner in which challenges shall be exercised, is mandatory. (24 Cyc. 365, 367; 16 R. C. L. 250.) We are of the opinion that the trial court committed reversible error in allowing the prosecution an additional peremptory challenge after it had waived its fourth and last challenge and after the defendant had exercised all his peremptory challenges.

2. The information charges the defendant with the theft of one sewing machine, and one lot of harness of the personal goods and chattels of the Chicago, Burlington & Quincy Railroad Company. It appears from the evidence on the part of the State that a large quantity of household goods belonging to one C. S. Ingles were delivered by him to the defendant, who was then acting in the capacity of receiving and delivery clerk of the above named railroad company, for shipment by freight from Casper, Wyoming, to Scottsbluff, Nebraska. Ingles was in a hurry to catch the passenger train and did not have time to "mark" the goods. The defendant agreed with Ingles to "mark" the goods and ship them out. The larger part of the goods were shipped and received by Ingles at Scottsbluff, but the goods mentioned in the information, which were a part of the shipment, together with a bedstead, failed to arrive. The next day after the goods were left by Ingles on the depot platform in charge of defendant, defendant called up one Frank Hie, who was in the drayage business in Casper, and said he had a job for him and to come down to the depot. Hie arrived about ten o'clock in the morning, when defendant helped him load some sacked harness, a sewing machine, and a bedstead, and directed Hie to take the articles to the Ross house and place them in the basement, where Hie put other property for the defendant, the defendant at the time saying that there would be no one at home at the Ross house. At the time of the arrest of the defendant, the Ross house was searched and the sewing machine, harness and bedstead were found in that house and taken into court at the time of the trial and there identified by Ingles and one Fred Colby as belonging to Ingles and as being a part of the shipment to Scottsbluff. Fred Colby also testified that he had crated the goods for Ingles and was present at the time of delivery to the defendant at the depot, and corroborated Ingles as to what took place at the depot at the time of delivery,

except that he was not positive the defendant was the one to whom the goods were delivered. One George Colby testified that he received a letter from Ingles as to the missing goods and took the letter to defendant and made complaint that the goods mentioned in the information were not with the shipment when it arrived in Scottsbluff. At that time defendant told the witness that. all the Ingles goods had been shipped and had gone out the same day they were left with defendant. This is substantially the evidence of the State as to the property charged to have been stolen in the information, except some testimony as to value.

In addition to the above evidence, the State, over the objection and exception of the defendant, was allowed to go into great detail and to great length as to other property hauled by Hie for defendant at subsequent times and to other places in Casper than the Ross house, and also was allowed to show by several witnesses that some automobile tires and quart bottles of whiskey were found in the Ross house at the time of the search for and discovery of the Ingles property. The witness Hie testified that after the Ingles transaction he, at the request of defendant, hauled a cook-stove from the depot to a second hand store and that the defendant told him to have the boy sell it for defendant for $18.00; that he at another subsequent time hauled a tool-box for defendant from the depot down to the Star Rooms, that the tool-box was painted red at the time, that he afterwards saw the tool-box at the Star Rooms and it was freshly painted white, and was much lighter in weight than when he first hauled it. This tool-box was admitted in evidence at the trial. Hie was permitted also to testify as to some sacks of cigarettes that he delivered, at the defendant's request, to a Negro named Ford. Hie also testified that he had hauled many loads for defendant from the depot. A special agent for the railroad company and a police officer were both permitted

to testify as to six automobile tires and several quarts of whiskey found in the Ross house at the time of the search for the Ingles goods. These two witnesses were also permitted to testify as to the finding of the tool-box in the Star Rooms and as to its being freshly painted white. All this testimony was introduced over the objection and exception of the defendant. Indeed the larger part of the testimony in the case relates to these articles. There is no evidence in the record, so far as we are able to discover (and he Attorney General so states in his brief and so stated in oral argument) which tends to prove that the stove, tool-box, whiskey, or cigarettes were stolen from the railroad company or from any one else; in fact, the record is silent as to any like articles ever having been in the possession of the railroad company or ever having been stolen from any one; except the general statement of some of the railroad officials that both before and after the defendant had begun working for the railroad company many articles of freight had been stolen from the depot or had disappeared from the depot and buildings of the company. It appears from the evidence that the railroad company had been having a great deal of trouble with thefts of freight and other property and doubtless the prosecution, knowing of this systematic looting, and having found a part of the loot in a house where defendant had it placed, was resolved to show to the jury the complete details of the many thefts, on the theory, perhaps, of showing that the crime charged was part of a common scheme or plan which included numerous offenses. Doubtless in a proper case such evidence is competent (16 C. J. 591; State vs. Gillies, et al. (Utah), 40 Utah 541, 123 Pac. 93; 43 L. R. A. (N. S.) 776) (Note, Page 780), but even in such a case the evidence of other offenses must at least establish with a reasonable degree of certainty that the other transactions about which evidence is given, were in fact crimes; in other words, where it is

competent for the prosecution to prove other crimes similar to the one charged, the evidence as to the other similar crimes must at least make out a prima facie case that. such other crimes have been committed by the defendant (16 C. J. 592, Sec. 1142). This the evidence in the case before us utterly fails to do; as there is no evidence that the other articles testified about were ever stolen. We are of the opinion that the mass of testimony as to the articles other than those charged in the information to have been stolen could have served no other purpose than to have prejudiced the jury against the defendant; and that its admission was prejudicial error requiring the reversal of this case.

The judgment will be reversed with directions to the lower court to grant the defendant a new trial. .

*Reversed and remanded.*

BEARD, C. J., and POTTER, J., concur.

Blydenburgh, J., being unable to sit in this case, Hon. V. J. Tidball, Judge of the Second Judicial District, was called in as a member of the court and sat in his stead.