**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Ransom Patrick CROSS,
Defendant-Appellant.**

**No. 79–5704.**

United States Court of Appeals,
Fifth Circuit.
Unit A

March 13, 1981.

---

**3.** The comment observes that the election rules on disclosed and undisclosed principals are "not in accord."

Charles L. Roberts, El Paso, Tex., for defendant-appellant.

Jamie C. Boyd, U. S. Atty., Le Roy Morgan Jahn, Asst. U. S. Atty., San Antonio, Tex., for plaintiff-appellee.

Before WISDOM, RUBIN and SAM D. JOHNSON, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

Ransom Patrick Cross was convicted of two counts of making false material declarations before a grand jury in violation of 18 U.S.C. § 1623. Asserting several trial court errors, an improper breach of the attorney-client relationship by the government, and challenging the sufficiency of the evidence to support Count I of the Indictment, Cross contends that the convictions should be reversed. Discerning no reversible trial court error that affects Count II, we affirm the conviction on that count. However, the evidence adduced in support of the first count consisted only of two conflicting statements. One of them was made while Cross was under oath, but the other was not made under oath. This was insufficient as a matter of law to support the conviction. Therefore, we reverse the conviction on Count I.

Cross, a former criminal investigator with the El Paso, Texas Sheriff's office, was being held in the county jail, apparently on both state and federal charges. Seeking to "make a deal" with the federal authorities, Cross informed one of the jailers that he had some important information concerning the attempted assassination of Anthony Kerr, a local Assistant United States Attorney. In response to Cross's request, a meeting was arranged between Cross and Captain Reyes of the El Paso Sheriff's Department. After receiving some general information from Cross, Captain Reyes relayed Cross's request to federal agents. Cross subsequently met with a Federal Bureau of Investigation Agent and gave the agent a detailed description of the handguard of the weapon allegedly used in the assassination attempt. Cross informed another F.B.I. agent named Boyd that one "Timken" Larson and other members of the Banditos, a local motorcycle gang, were involved in the attempted assassination and reiterated his detailed description of the weapon. Cross, who had been closely involved with the Banditos when he was a criminal investigator, indicated that his information was based on conversations with the actual participants.

Agent Boyd, assuming that he had reached an agreement with Cross, recommended that the charges pending against Cross be dropped. The agent's recommendation was accepted and the federal charges were dropped.[1] Cross was then called to testify before a grand jury that was investigating the attempted assassination of Kerr. The following questions were asked of Cross before the grand jury:

"Q. What have you heard from the Bandits?

A. Nothing.

Q. What have you heard from Timken about the matter?

A. Nothing.

Q. Has Timken discussed this with you at all?

A. No sir.

Q. Has Big Jimmy?

A. Only in the sense of wondering who did it . . ."

The questioning then turned to the weapon used in the attempt:

"Q. Where is the gun?

A. I don't know.

Q. What have you heard about it?

A. Nothing more than what the officers have told me.

---

1. The record does not reveal what federal charges were pending against Cross or whether state charges remained.

Q. What officers have given you a description of the gun.

A. Officer Jim Beck of the F.B.I. in El Paso.

Q. He told you what, specifically?

A. As best as I can recall, I had read in the newspapers that it was a M–1 Carbine, a .30 caliber carbine, and he specifically told me, in my front yard in the presence of another agent, that the handguard on the front of the weapon was ventilated metal."

On the basis of these statements, the grand jury returned an indictment charging Cross with two counts of making false material declarations. Cross was tried on this indictment.

When the jury was unable to arrive at a verdict, a mistrial was declared. After the trial, without the approval of Cross's counsel, the government communicated with Cross and prevailed upon him to take a polygraph test. Cross was subsequently retried and convicted on both counts.

I

Cross challenges the sufficiency of the evidence presented in support of the offense charged in Count I. The essential elements of a prosecution under 18 U.S.C. § 1623 are (1) knowingly making (2) a false (3) material declaration while (4) under oath. Cross contends that there was insufficient evidence to support the conclusion that the statements he made before the grand jury concerning his conversations with the Banditos, Timken or Big Jimmy were false. The only evidence supporting the charge that he testified falsely to the grand jury was the inconsistency of the statements Cross made to Agent Boyd with his grand jury testimony.

 Patently, one of Cross's statements was incorrect. However, the jury could not possibly determine beyond reasonable doubt from the evidence before it which one was false. While two inconsistent statements, each made while the declarant was under oath, are sufficient to support a charge of violating 18 U.S.C. § 1623, see 18 U.S.C. § 1623(c), see, e. g., United

States v. Patrick, 542 F.2d 381 (7th Cir.), cert. denied, 430 U.S. 931, 77 S.Ct. 1551, 51 L.Ed.2d 775 (1976), two inconsistent statements, only one of which is made under oath, are insufficient, without additional independent evidence, to support the conclusion that the one made before the grand jury was untrue. There was no documentary or testimonial evidence that proved Cross had in fact discussed the attempted assassination with Timken, Big Jimmy or the Banditos. We must, therefore, reverse the conviction on Count I of the indictment.

II

Cross next raises two assertions of error that arise from the government's visit to his home between trials. During that visit, Cross acceded to an F.B.I. agent's request to take a polygraph test. No one communicated with Mr. Cross's counsel before the visit or the test and the lawyer was unaware of either until the date jury selection commenced for the second trial. Three days later, after the jury had been selected, defense counsel filed both a motion for a continuance, to give him time to determine what evidence the government had gleaned from the polygraph test, and a motion to suppress any evidence derived from it. The trial court denied the motion for a continuance but granted the "Motion to Suppress Illegally Obtained Evidence and the Fruits Thereof."

Despite the successful attempt to have the evidence suppressed, Cross argues that the refusal to grant a continuance violated his sixth amendment right to counsel and, therefore, warrants a new trial. Viewing the totality of circumstances surrounding the request for a continuance, we do not believe that Cross's right to counsel was violated. A request for a continuance is committed to the sound discretion of the trial court. The trial judge's ruling should not be disturbed unless there is a clear showing of abuse of that discretion, *United States v. Siegel*, 587 F.2d 721 (5th Cir. 1979), by evidence that he was prejudiced by the trial court's action. *United States v. Houde*, 596 F.2d 696 (5th Cir. 1979).

■ Cross contends that he was prejudiced by the denial because there was insufficient time to repair a damaged attorney-client relationship. He asserts that the damage was caused by his attorney's surprise that Cross had consented to a polygraph test. In addition, he argues that more time was needed to discover the fruits of the polygraph test. These contentions must fail for two reasons. There is no evidence in the record, other than the vehement protestations in his brief filed in this court, that Cross and his attorney were unable to cooperate after the polygraph test was disclosed to counsel. Moreover, the trial judge granted Cross's pretrial motion to suppress the polygraph test and all evidence that was derived from it. Under the circumstances, suppression was all that was required. Therefore, concluding that Cross was not prejudiced by the trial court's denial of his requested continuance, we find that he was not deprived of his right to counsel.

■ Cross next contends, with respect to the polygraph test, that the incident represents an intentional breach of the attorney-client relationship by the government and that the only proper remedy is dismissal of the indictment. It is unquestionable that the conduct of the F.B.I. agent, apparently approved by the United States Attorney, represents a grossly improper breach of Cross's relationship with his trial counsel. *See Lee v. United States,* 322 F.2d 770, 777 (5th Cir. 1965) ("legal ethics forbid a United States attorney or a government agent to by-pass the lawyer of a defendant",) *See also* Code of Professional Responsibility, Disciplinary Rule 7–104. This does not mean, however, that the only proper remedial measure is dismissal of the indictment.

The Supreme Court, in *United States v. Morrison,* —— U.S. ——, 101 S.Ct. 665, 66

L.Ed.2d 564 (1981), recently addressed the question whether dismissal of an indictment was appropriate relief to be afforded a criminal defendant whose sixth amendment right to counsel had been violated. There, two government agents who knew that the defendant was represented by counsel, visited her home with neither the knowledge nor permission of her counsel. During their visit, the agents characterized the trial judge as someone who would give the defendant a lengthy jail term, observed that they could make sentencing recommendations to the United States Attorney and disparaged the ability of her trial counsel. The Court, assuming that the government conduct violated the sixth amendment, held that, even where the violation was deliberate, dismissal of the indictment was inappropriate "absent demonstrable prejudice, or substantial threat thereof." *Id.* at ——, 101 S.Ct. at 666.

Dismissal of the indictment is likewise unwarranted here. Cross presented no evidence that the F.B.I. agents intentionally sought to destroy his attorney-client relationship. More important, in light of the trial judge's suppression of the evidence, Cross cannot validly assert any prejudice flowing from the government's conduct.[2] Because of the absence of prejudice, we hold that dismissal of the indictment was not warranted.

### III

■ The statements that Cross made to Captain Reyes and to various F.B.I. agents were introduced against him at the trial. Citing Rule 11(e)(6), F.R.Crim.P., Cross argues that, because the statements were made in the context of negotiations between a criminal defendant and the authorities, they were inadmissible statements made in connection with plea negotiations.

---

**2.** *Citing Harris v. New York,* 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971) and *United States v. Havens,* 446 U.S. 620, 100 S.Ct. 1912, 64 L.Ed.2d 559 (1980), Cross vigorously asserts that the results of the polygraph test, although suppressed by the trial judge, could have been introduced during cross-examination if he testified. Therefore, he argues that he did not testify in his own behalf and was thereby preju-

diced. We find no evidence in the record supports the assertion that the trial judge would have permitted the introduction of that evidence. Cross failed to seek an order barring the use of this evidence *if* he testified and did not take the stand. We cannot conclude that his inchoate fear of the introduction of the polygraph test was prejudicial to his defense.

The rule provides that "evidence ... of statements made in connection with, and relevant to any [plea of guilty, or a plea or nolo contendere or an offer to plead guilty or nolo contendere to the crime charged or to any other crime] is not admissible in any civil or criminal proceeding against the person who made the plea." F.R.Crim.P. 11(e)(6). *See also* F.R.Evid. 410.

We have en banc defined the scope of plea negotiations in *United States v. Robertson*, 582 F.2d 1356 (5th Cir. 1978) (en banc). *See also United States v. Geders*, 585 F.2d 1303 (5th Cir. 1978) (en banc), *cert. denied*, 441 U.S. 922, 99 S.Ct. 2031, 60 L.Ed.2d 396 (1979). Judge Hill, writing for the court in *Robertson*, set the predicate for the court's holding by summarizing the discussions that are contemplated by Rule 11:

> Plea negotiations are inadmissible, but surely not every discussion between an accused and agents for the government is a plea negotiation. Suppressing evidence of such negotiations serves the policy of insuring a free dialogue only when the accused and the government actually engaged in plea negotiations: "discussions in advance of the time for pleading with a view to an agreement whereby the defendant will enter a plea in the hope of receiving certain charge or sentence concessions."

*United States v. Robertson*, 582 F.2d 1356, 1365 (5th Cir. 1978) (en banc). There is plea bargaining only when, "the accused *contemplates entering a plea* to obtain a concession from the government [and] the government contemplates making some concession *to obtain the accused's* plea." Id. at 1366 (emphasis added). *See generally*, Note, Guilty Plea Bargaining: Compromises by Prosecutors to Secure Guilty Pleas, 112 U.Pa.L.Rev. 865, 866–69 (1964).

The defendants in *Robertson*, motivated by a desire to absolve their wives from complicity, gave a confession to several federal agents. Stating that "the quintessential *quid* of a plea negotiation *quid pro quo* was missing," we held that the confession was outside the realm of plea negotiation. "The only concession which [the defendants] offered, and the only concession which the government received ... was a confession." *Id.* at 1369. *Cf. United States v. Ross*, 493 F.2d 771 (5th Cir. 1974) (husband's statements that he would "take the blame" if his wife were released held to be part of plea negotiations.).

The statements made by Cross were also not Rule 11 plea negotiations. By expressing a willingness to aid in the F.B.I.'s investigation of the Kerr assassination attempt, Cross was offering information in exchange for leniency. Like the defendants in *Robertson*, Cross did not contemplate pleading guilty either to the charges for which he was being held or to any other charges. He offered, instead, to cooperate in the unrelated investigation. Here too, the *"quid"* of a plea agreement was missing. Therefore, the discussions that were held between Cross and the authorities were not the type of negotiations envisioned by Rule 11 and the statements were properly admitted.

## IV

Cross next contends that the district court erred by permitting witnesses, over defense counsel's objection, to mention that Cross had "other federal charges"[3] pending at the time he first approached Captain Reyes with his offer to provide information. Another witness testified that Cross had been informed that the F.B.I. would be in a position "to help him with [the] charges." Cross asserts that these references to "other charges" were improper and constituted inadmissible character evidence. The government opposes this contention on alternate grounds. It contends the other charges "were part of the res gestae of the offense charged, in that [they] established ... motive," Fed.R.Evid. 404(b) or because the charges were so closely related to the perjury charge that the perjury charge could not be fully supported without mentioning the context, *United States v. Beechum*, 582

---

**3.** These charges, apparently firearm related, were never specifically identified during the trial.

F.2d 898, 912, n.15 (5th Cir. 1978) (en banc), cert. denied, 440 U.S. 920, 99 S.Ct. 1244, 59 L.Ed.2d 472 (1979). Alternatively, the government argues that the admission of the references constitutes harmless error.

■ We cannot accept the government's contention that the references to "other charges" were proper. Evidence of other wrongs is not admissible to prove the character of a person. The government's reliance on the thesis that the proof showed a motive for the false testimony is misplaced. It cannot be seriously maintained that, because Cross had "other charges" pending against him when he first approached the authorities, he was motivated to lie before the grand jury. Cf. United States v. Johnson, 525 F.2d 999, 1006 (2d Cir. 1975), cert. denied, 424 U.S. 920, 96 S.Ct. 1127, 47 L.Ed.2d 327 (1976).

■ Furthermore, the reference to the other charges cannot be justified on the ground that they were intertwined with the crime charged. Although the charges that were pending against Cross were part of the factual circumstances of this case, they are not so closely integrated with the crime of making false material declarations before a grand jury that proof of perjury, without reference to them, would be impossible or even difficult. It is equally clear that the other charges were not "part of a common plan, scheme or design." United States v. Beechum, 582 F.2d 898, 912, n.15 (5th Cir. 1978) (en banc), cert. denied, 440 U.S. 920, 99 S.Ct. 1244, 59 L.Ed.2d 472 (1979). Therefore, we conclude that admission of these references was improper.

We turn to the government's assertion that the error was harmless. This claim must travel uphill. When Cross was first tried, the district court ruled that reference to these other charges was improper. Notwithstanding this first failure, at the second trial, the government again proffered the evidence, the defendant objected and the government argued that the reference was "important" and should be considered by the jury. A different district judge then permitted the witnesses to make the challenged references.

The government now asserts that admission of the evidence that it fought so hard to get before the jury was harmless error. It is anomalous to suggest that so much effort should have been expended to introduce evidence that did not in fact injure the opposing party. However, considering the overwhelming evidence presented in support of the second count and noting that the district judge admonished the jury not to consider any conduct or offense not alleged in the indictment, we conclude that the error does not necessitate reversal of the conviction on the second count. It was harmless in the legal sense only because it was redundant, so we do not reverse the conviction. This does not mean that we condone the prosecutor's tactics.

We have carefully considered appellant's other assertions of error and find them to be without merit. Accordingly, we REVERSE the conviction on Count I and REMAND the case to the district court and AFFIRM the conviction on Count II.

AFFIRMED in part and REVERSED and REMANDED in part.