**Michael Lynn BISHOP, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

No. 83–157.

Supreme Court of Wyoming.

July 20, 1984.

Rehearing Denied Aug. 9, 1984.

Leonard D. Munker, State Public Defender, and Sylvia Lee Hackl, Appellate Counsel, Wyoming Public Defender Program, Cheyenne, for appellant.

A.G. McClintock, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., Crim. Div., John Renneisen, Sr. Asst. Atty. Gen., and Margaret M. White, Asst. Atty. Gen., Cheyenne, for appellee.

Before ROONEY, C.J., and THOMAS, ROSE, BROWN and CARDINE, JJ.

BROWN, Justice.

Appellant Michael Lynn Bishop was charged by an information with two counts of burglary in violation of § 6–7–201(a)(i), W.S.1977. Count I alleged that appellant committed a burglary on December 22, 1980, and Count II alleged that appellant committed another burglary on February 25, 1982. Appellant pled not guilty to both counts.

Appellant filed a motion to sever the two counts for the purposes of trial contending prejudice and because the two charges were remote in time. The trial court denied the motion to sever. Appellant also filed a motion in limine asking the court to preclude the state from introducing evidence of prior bad acts which included evidence of theft, receiving stolen property and burglary. This motion was also denied. Appellant was found guilty of both counts and sentenced to the penitentiary.

The court further required that appellant pay restitution on both counts. Appellant claims that the trial court erred in admitting evidence of prior acts of misconduct, in denying the motion to sever, and in imposing restitution as a post-incarceration condition.

· We will affirm in part and reverse in part.

▪ Appellant first argues that the trial court erred in admitting evidence of prior acts of misconduct and of unrelated, unsolved burglaries. On appeal deference is given to a trial court's determination concerning the admissibility of evidence. As long as there is a legitimate basis for a court's decision we cannot say that there was an abuse of discretion. *Ortega v. State*, Wyo., 669 P.2d 935 (1983). To resolve this issue we will examine the evidence admitted at trial and Rule 404(b), Wyoming Rules of Evidence.

Appellant objects to the evidence and testimony admitted under Rule 404(b) because it tends to involve and incriminate him in other unrelated incidents. The evidence objected to relates to three burglaries in Laramie, Wyoming, with which appellant was not charged. The sequence of events involving the Laramie burglaries is: December 22, 1980—Burgess residence burglarized (Count I); March 20, 1981—Boswell residence burglarized; September 30, 1981—Bentley and McCue residences burglarized; and February 25, 1982—McNiff residence burglarized (Count II).

The Burgess home was broken into sometime between 1:00 p.m. and 6:30 p.m. on December 22, 1980. The back door to the house had been forcibly opened and left ajar. The house looked in order but the Burgesses discovered that silverware, jewel boxes, pistols, coins and wristwatches were missing. One of the pistols had a serial number which matched the serial number on a pistol recovered from the Federal Pawn Shop in Denver on May 25, 1982.

The individual who made the pawn was Michael L. Bishop.

The Boswell home was broken into between 8:00 a.m. and 3:30 p.m. on March 20, 1981. Entry was made through the ground-floor bedroom window at the back of the house. There were no fingerprints and nothing was disturbed in the house, but the sterling silver, some jewelry, and two sterling silver candlesticks were missing. At trial Mrs. Boswell identified the candlesticks as those taken from her home as well as she could without benefit of initials or a serial number. They were recovered on August 10, 1982, from a family in Cheyenne who had received them from Michael L. Bishop, a "personal friend."

The Bentley burglary occurred between 2:00 p.m. and 3:00 p.m. on September 30, 1981. Entry was gained by forcing open the back door of the house. Very little was disturbed inside the house, but much of the Bentleys' jewelry and silverware had been taken.

The time of day the McCue burglary occurred on September 30, 1981, is unknown. The burglar entered through a sliding glass window at the back of the house. Again, little was disturbed but the McCues discovered almost all of their jewelry and a camera were missing. The silver was hidden in the kitchen.

The evidence which tends to tie appellant to the Bentley and McCue burglaries is the manner in which the burglaries were conducted, and the fact motel clerks had receipts that stated Michael L. Bishop stayed in Laramie September 29, 1981, and checked out September 30, 1981.

The next event, November 1, 1981, which tended to incriminate appellant is an automobile accident after which certain items were found in appellant's vehicle. The investigation of the accident revealed weapons, pistols, several items of jewelry, silverware, surgical rubber gloves, and a screwdriver.[1]

---

**1.** There was some evidence that the forcible entries could have been accomplished with the use of a screwdriver or similar device.

The fifth and final burglary occurred on or about February 25, 1982. This burglary is Count II of the information. The burglar entered through the back of the house at an unknown time of day by forcing open a back door. No fingerprints were found; however, a footprint was found and a plaster cast was made of the footprint. Items taken included a music box, a western pistol, two wristwatches, and meerschaum pipes. (All the McNiffs' silverware and jewelry were in their safe deposit box at the bank.)

On or about March 1, 1982, a music box similar in description to that taken from the McNiff residence was presented by Bishop to a New Mexico antique dealer. It was learned that Bishop had previously sold the antique dealer some sterling silver with a red stone in each handle, which was later determined to be stolen.

It was again learned that Bishop had registered at a Laramie motel on February 24, 1982, and checked out on February 25, 1982. This coincides with the McNiff burglary, and placed appellant in Laramie at the time of the burglary.

Bishop was being interviewed by the Laramie police on September 2, 1982, when Detective O'Malley noticed his boots. It was noted that he was wearing a pair of Dingo boots that had the same type of sole and were the same size as the plaster cast which the police had taken from the McNiff residence.

■ For evidence to be admissible at trial under Rule 404, W.R.E., it must also be relevant under Rule 402, W.R.E. Relevant evidence is defined in Rule 401, W.R.E., as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Once it is determined that the evidence is relevant, it must then be determined if the probative value is substantially outweighed by the danger of unfair prejudice, confusion, or waste of time as defined in Rule 403, W.R.E. If there is evidence of other crimes, wrongs, or acts, then it may only be admissible

under Rule 404(b), W.R.E., and cannot be used to show the character of the accused or that the accused has a propensity to commit crimes such as those with which he is charged. Rule 404, W.R.E.

*"Other crimes, wrongs, or acts.*—Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Rule 404(b), W.R.E.

■ Wyoming follows the general rule that evidence of other crimes, wrongs, or acts is normally not admissible in the trial of a criminal case. *Elliott v. State*, Wyo., 600 P.2d 1044 (1979). The general rule is codified in the first sentence of Rule 404(b). In applying the second sentence of the rule, however, we have adopted a rather liberal attitude toward admitting evidence of other crimes, wrongs, or acts. See *Ortega v. State*, supra; *Evans v. State*, Wyo., 655 P.2d 1214 (1982); *Hopkinson v. State*, Wyo., 632 P.2d 79 (1981), cert. denied 455 U.S. 922, 102 S.Ct. 1280, 71 L.Ed.2d 463 (1982); *Hatheway v. State*, Wyo., 623 P.2d 741 (1981); *Grabill v. State*, Wyo., 621 P.2d 802 (1980); *Elliott v. State*, supra. Such evidence is admissible if it is substantially relevant for other purposes, and its probative value outweighs its prejudicial effect. *Grabill v. State*, supra; and *Elliott v. State*, supra. See also 22 Wright and Graham, Federal Practice and Procedure: Evidence § 5239 (1978).

■ From our detailed review of the record we believe that the Bentley and McCue burglaries do not tend to make appellant's guilt in the charged burglaries more probable. Evidence of other crimes may be used to show that the modus operandi of the other crimes matches the crime charged. This helps prove the defendant's guilt when the perpetrator of the other crimes is known, and therefore helps prove the defendant's guilt when he is the perpe-

trator of the other crimes, and the other crimes are

"* * * unique or unusual, and similar in nature to the crime charged, or (whether unusual or not) very close in detailed resemblance to the crime charged (distinctively similar), then such crimes may be proven and the trier allowed to infer that the accused is probably the culprit, since the crime charged bears the mark of his handiwork. * * *" 2 Louisell and Mueller, Rule 404, § 140, p. 142 (1978).

But, "[i]n no event will evidence of other criminal acts be admissible unless a relationship between such acts and the defendant is established." 1 Wharton's Criminal Evidence, § 240, p. 532 (1972). The manner in which the Bentley and McCue burglaries were committed, while being similar, were not so unique as to warrant admission into evidence to prove the identity of the accused, the ultimate issue in this case. The fact that appellant was in Laramie at the time of these burglaries does not, without other evidence, prove that appellant committed the acts charged.

■■■ Appellee claims that the evidence of the Bentley and McCue burglaries was not admitted to show the identity of the perpetrator of the crime but to show a plan, scheme or course of criminal conduct executed by appellant during the pertinent time period, December, 1980, through February, 1982. To allow evidence of other crimes to show a plan, scheme or course of criminal conduct, it must also be shown that there is a relationship between the crimes and the defendant. 1 Wharton's Criminal Evidence, supra. However, the relationship need not be as strong for evidence to be admissible to show plan, scheme or course of criminal conduct as it needs to be to show modus operandi or identity. *United States v. Myers*, 550 F.2d 1036 (5th Cir.1977). There are several factors to be determined if evidence of other crimes is admissible:

"(1) The proof of the other similar crimes must be plain, clear, and convincing.

"(2) The other crimes must not be too remote in time from the charged offense.

"(3) The evidence of the other crimes must be introduced for a purpose sanctioned by Rule 404(b) of the Federal Rules of Evidence.

"(4) The element of the charged offense that the evidence of other crimes is introduced to prove must be a material issue in the case.

"(5) There must be a substantial need for the probative value of the evidence of the other crimes." *United States v. Myers*, supra, at 1044–1045. See also Louisell & Mueller, Rule 404, § 140 (1978).

■■■ While the proof of the Bentley and McCue burglaries was plain, clear and convincing, there was too little circumstantial evidence to connect appellant to these two uncharged burglaries. The defect in the proofs is the identity of the perpetrator. It is clear that as a predicate to the introduction of extrinsic acts the prosecution must establish that the defendant committed them. *United States v. Chilcote*, 724 F.2d 1498 (11th Cir.1984); and *United States v. Guerrero*, 650 F.2d 728 (5th Cir.1981). Proof of identity is not required beyond a reasonable doubt, but a prima facie case is necessary in order to make extrinsic acts admissible. *United States v. Chilcote*, supra; *United States v. Edwards*, 696 F.2d 1277, 1280 (11th Cir.1983), cert. denied —— U.S. ——, 103 S.Ct. 1884, 76 L.Ed.2d 813 (1983); *United States v. Dothard*, 666 F.2d 498 (11th Cir.1982).

Even though the evidence of the Bentley and McCue burglaries was improperly admitted it was harmless error. The admission of such evidence does not mandate reversal of a conviction in all instances. As the court said in *United States v. Corey*, 566 F.2d 429, 432 (2nd Cir.1977):

"* * * A nonconstitutional error, as in the case of erroneous admission of similar act evidence, is harmless if it is 'highly probable' that the error did not contribute to the verdict. [Citation.] Where there is overwhelming evidence of guilt, as there was here, erroneous evidentiary

rulings on such collateral matters are often harmless. [Citations.]"

Other federal courts have also held that the improper admission of similar acts evidence under Rule 404, Federal Rules of Evidence, can be treated as harmless error. *United States v. Chilcote*, supra; *United States v. Cross*, 638 F.2d 1375 (5th Cir. 1981); *United States v. Bettencourt*, 614 F.2d 214 (9th Cir.1980); and *United States v. Bosch*, 584 F.2d 1113 (1st Cir.1978).

■■■ For an error to be regarded as harmful, there must be a reasonable possibility that in the absence of the error, the verdict might have been more favorable to the defendant. *Hoskins v. State*, Wyo., 552 P.2d 342 (1976), cert. denied 430 U.S. 956, 97 S.Ct. 1602, 51 L.Ed.2d 806 (1977). Because of the other evidence introduced against Bishop, we hold that there is not a reasonable possibility that the verdict would have been different. In its totality the other evidence introduced was overwhelming in the context of this case. This conclusion is further bolstered by the fact that the trial court gave an excellent instruction limiting the jury's use of the other crimes, acts or wrongs as evidence. In our view this mitigates potential prejudice caused by the evidence.

■■■ We hold also that it was not an abuse of discretion to admit into evidence the Boswell burglary and evidence concerning the contents of appellant's vehicle when it was involved in an accident investigated by the police.

The second issue we address is whether the trial court erred in denying appellant's motion for severance of the two counts. Rule 12, Wyoming Rules of Criminal Procedure, states:

"The court may order two (2) or more indictments or informations or both to be tried together if the offenses, and the defendants, if there is more than one (1), could have been joined in a single indictment or information. The procedure shall be the same as if the prosecution were under such single indictment or information."

■■■ The burglary charges here were joined in the same information pursuant to Rule 11, W.R.Cr.P., and the motion to sever was brought pursuant to Rule 13, W.R. Cr.P. *Hopkinson v. State*, supra; and *Tabor v. State*, Wyo., 616 P.2d 1282 (1980). The evidence would have been the same had the charges been tried separately; therefore, there was no prejudice in trying them jointly.

■■■ The general rule in regard to joinder of offenses is that joinder is proper, absent compelling reasons for severance. *Linn v. State*, Wyo., 505 P.2d 1270 (1973), cert. denied 411 U.S. 983, 93 S.Ct. 2277, 36 L.Ed.2d 405, reh. denied 412 U.S. 944, 93 S.Ct. 2780, 37 L.Ed.2d 405. "'* * * Joint trials serve the public interest by expediting the administration of justice, reducing docket congestion, conserving judicial time as well as that of jurors along with avoiding the recall of witnesses to · duplicate their performances." *Jasch v. State*, Wyo., 563 P.2d 1327, 1335 (1972).

Granting or denying a motion for severance rests within the discretion of the trial court. *Jasch v. State*, supra; and *Dobbins v. State*, Wyo., 483 P.2d 255 (1971). We can see no reason to overrule the trial court's determination in this regard.

The third and final issue we address is whether the trial court erred in imposing restitution as a post-incarceration condition. We hold that this was error because there is no statute authorizing restitution when the defendant is sentenced to incarceration.

Section 7–13–308, W.S.1977, Cum.Supp. 1983, is the only statute which provides for a plan of restitution, and it applies only when the sentencing court orders a suspended imposition of sentence, a suspended sentence or probation. The statute does not allow for restitution as a post-incarceration condition.

■■■ The legislature is the body empowered to determine what crimes are punishable and prescribe punishment for those acts. The sentencing court has no power

to order post-incarceration restitution absent some statutory authority. *Barnes v. State,* Wyo., 670 P.2d 302 (1983).

As we reasoned in *Barnes,* the sentence may have been treated differently if the trial court had been persuaded that it could not impose restitution when the defendant was sentenced to incarceration. Therefore, we affirm the conviction, but reverse the sentence because it is not a lawful sentence. We remand for resentencing of the appellant in accordance with the law stated in this opinion.

CARDINE, Justice, dissenting, with whom ROSE, Justice, joins.

I dissent. Appellant was tried for two separate burglaries charged in a single information, said burglaries being alleged to have occurred on December 22, 1980 and February 25, 1982 in Laramie, Wyoming. The court received in this trial evidence of three other unsolved burglaries, one which occurred March 20, 1981 and two which occurred September 30, 1981. The facts concerning the five burglaries are as follows.

The first burglary with which appellant was charged occurred at the Burgess residence the afternoon of December 22, 1980. The back door had been forcibly opened and left ajar. Other than the broken door, the house looked in order and did not seem to be disturbed. Silverware, jewelry, and two pistols were taken. The back yard was fenced. The second burglary with which appellant was charged occurred at the McNiff house during the night of February 25, 1982 or the morning of February 26, 1982. A window in the back door had been broken. A pistol, two watches, a set of meerschaum pipes, a music box and three beers were taken. The house was left in disarray. The back yard was fenced.

The three unresolved burglaries received in evidence occurred at the Boswell, Bentley and McCue residences in Laramie, Wyoming. In the burglary at the Boswell house, entry was through an unlocked bedroom window in the basement sometime during the day of March 20, 1981. The house was not damaged. Silverware, jewelry and a set of candlesticks were taken. The back yard was fenced. The Bentley and McCue burglaries occurred the afternoon of September 30, 1981. Entry at the Bentley residence was through the back door; at the McCue residence, entry was through a dining room window. The houses were not disturbed. Silverware and jewelry were taken from the Bentley residence. Jewelry and a camera were taken from the McCue residence. Both back yards were fenced. Appellant was not identified as the perpetrator of the three unresolved burglaries.

We have previously held that the reason for not allowing inquiry into charges and accusations in which convictions did not result is that:

" 'It is a dangerous species of evidence, not only because it requires a defendant to meet and explain other acts than those charged against him and for which he is on trial, but also because it may lead the jury to violate the great principle, that a party is not to be convicted of one crime by proof that he is guilty of another.' " *Gabrielson v. State,* Wyo., 510 P.2d 534, 536 (1973) (quoting from *Rosencrance v. State,* 33 Wyo. 360, 239 P. 952, 953 (1925)).

We also stated that:

"[I]t is settled law in this jurisdiction that mere charges, accusations, and arrests are consistent with innocence; and they should not be inquired into if the purpose of the prosecution is to discredit the witness in the eyes of the jury and convey to the jury knowledge that such witness was charged with a crime." Id. at 536.

We have previously upheld the introduction of other crimes, wrongs, or acts in connection with Rule 404(b), W.R.E., when submitted for purposes other than that the accused has criminal characteristics. *Evans v. State,* Wyo., 655 P.2d 1214 (1982) (motive); *Hopkinson v. State,* Wyo., 632 P.2d 79 (1981) (motive); *Hatheway v. State,* Wyo., 623 P.2d 741 (1981) (knowledge); *Vasquez v. State,* Wyo., 623 P.2d 1205

(1981) (past pattern of conduct); *Elliott v. State*, Wyo., 600 P.2d 1044 (1979) (motive). We have allowed extrinsic evidence during rebuttal regarding identification and intent in *Grabill v. State*, Wyo., 621 P.2d 802 (1980), and when the defendant has opened the door by first offering testimony. *Sanville v. State*, Wyo., 593 P.2d 1340 (1979). In all of those cases the identity of the defendant as the perpetrator of the other acts received in evidence was not in dispute.

In the vast majority of cases which deal with the propriety of receipt of evidence of crimes other than the crime charged, the identity of the perpetrator of those other crimes is undisputed. In this case, however, the identity of the defendant as the perpetrator of the crimes was in dispute. Thus, the problems involved in determining admissibility were compounded: first, the evidence must make a prima facie case that the defendant was the perpetrator of the other burglaries; second, the evidence must be admissible under a Rule 404(b) exception; and third, if admission were proper, the probative value must not be outweighed by its prejudicial effect.

Appellant was not charged with nor convicted of the three unsolved burglaries. With respect to the two burglaries of September 30, 1981, all that could be said was that appellant was in the town of Laramie on the date they occurred. So were approximately 20,000 other people in town on this date. The only testimony relating to appellant's involvement in the Boswell burglary was testimony from a motel clerk which placed him in Laramie at the time of the incident and the fact that he had candlesticks similar to those stolen which he had given to a friend. This evidence does not rise to the level of the requisite prima facie [1] case that appellant was in fact the perpetrator. *State v. Jones*, 27 Wyo. 46, 191 P. 1075 (1920). But even assuming, arguendo, that this testimony was suffi-

cient to identify appellant, I would still find this evidence improperly admitted.

Two concerns are expressed by the first sentence of Rule 404(b) in that (1) the jury may convict a "bad man" who deserves to be punished, not because of the crime charged, but because of prior or subsequent misdeeds, and (2) that the jury might infer that because the accused has committed other crimes, he probably also committed this crime. *United States v. Phillips*, 599 F.2d 134 (6th Cir.1979).

A defendant must be tried for what he did and not for who he is. *United States v. Foskey*, 636 F.2d 517 (D.C.Cir.1980).

> "Rules 403 and 404(b) are not obstacles to be cleared at all costs, even by cutting around corners whenever it is possible to do so. These rules were designed to ensure a defendant a fair and just trial based upon the evidence presented, not upon impermissible inferences of criminal predisposition or by confusion of the issues." Id. at 525.

For other-acts evidence to be admissible, it must be relevant to an actual issue of the case tried. The probative value must not be outweighed by unfair prejudice. There is no presumption that other-crime evidence is relevant. *United States v. DeVaughn*, 601 F.2d 42 (2nd Cir.1979). See, *United States v. Halper*, 590 F.2d 422 (2nd Cir. 1978). There must be a logical nexus between the crimes. *United States v. Mann*, 590 F.2d 361 (1st Cir.1978). The evidence must be offered for an issue that is in question. *United States v. Ring*, 513 F.2d 1001 (6th Cir.1975), 30 A.L.R.Fed. 860.

> "Too often we lose sight of the fact that the rule is primarily a rule of exclusion of evidence and not one of admission, and, although there are many exceptions, these do not detract from the general exclusionary approach which the rule demands.
>
> "Several factors have contributed to formulation of a cautious judicial attitude.

---

**1.** "Prima facie" is defined by Black's Law Dictionary (5th Ed.1979) as:

"At first sight; on the first appearance; on the face of it; so far as can be judged from the first disclosure; presumably; a fact presumed to be true unless disproved by some evidence to the contrary. * * * "

"First, the accused is required to defend charges which are not described in the information or indictment. As a result he is required to defend past actions [for] which he may have in the past answered and with respect to which he may have even served his sentence. Thus, he is in effect tried as a recidivist though such a charge is not a part of the federal criminal code.

"Secondly, although such evidence may have at least some relevance to the offense being tried, its predominant quality is to show up the defendant's character as a car thief or a bad check artist, for example. Proof of defendant's sociopathic disposition is not a valid object. Showing that a man is generally bad has never been under our system allowable. The defendant has a right to be tried on the truth of the specific charge contained in the indictment.

"Third, an obvious truth is that once prior convictions are introduced the trial is, for all practical purposes, completed and the guilty outcome follows as a mere formality. This is true regardless of the care and caution employed by the court in instructing the jury.

"Thus, it is clear that the problem is not a simple evidentiary one, but rather goes to the fundamental fairness and justice of the trial itself." (Footnote omitted.) *United States v. Burkhart,* 458 F.2d 201, 204–205 (10th Cir.1972).

The district court allowed the evidence on the theory that it related to identity. Rule 404(b) was incorrectly invoked on this basis. Admitting evidence for the purpose of identity requires an inference that if the defendant committed one crime, then in all probability, because of the unusual or distinctive nature of the crimes and the close similarity between them, he committed the second. These burglaries bore no special signature such as unusual mode of entry, time of occurrence, or special circumstances. They were so common as to be entirely unhelpful. Thus, the houses were entered when no one was at home, the entrances were not observed, the back yards were fenced, and easily "fenced" items were tak-

en. These characteristics do not rise to the level of a "signature," and the evidence has been held not admissible where

"[t]he conduct was not sufficiently 'peculiar, unique or bizarre,' * * * nor was it so unusual or distinctive as to constitute * * * personal 'signature' on each crime * * *." (Citations omitted.) *United States v. Ezzell,* 644 F.2d 1304, 1306 (9th Cir.1981).

"Where the alleged similarities between the crimes reveal little in common other than a sequence of time from the crime charged, the acts are not unusual and distinctive enough to come within the purview of the similarity element of the exception." *State v. Case,* Mont., 621 P.2d 1066, 1071 (1980).

The State, recognizing the weakness of relying on "identity" as a proper ground for admitting the other-crimes evidence, contends that the evidence was properly admissible under the "common plan" exception. When extrinsic acts are admitted to show a common plan, scheme or design, the evidence is admissible only if it is

" * * * 'so linked together in point of time and circumstances with the crime charged that one cannot be shown without proving the other.' * * * Courts have admitted extrinsic act evidence to show a defendant's design or plan to commit the specific crime charged, *but never to show a design or plan to commit 'crimes of the sort with which he is charged.'* * * * Thus, proof of design or plan by showing the commission of similar acts requires more than

" 'merely a similarity in the results, but such a concurrence of common features that the various acts are naturally to be explained as caused by a general plan of which they are the individual manifestations. * * *' " (Emphasis added; emphasis in original omitted.) *United States v. Dothard,* 666 F.2d 498, 502 (11th Cir.1982).

The common-plan theory must warrant an inference that if the defendant committed the other acts introduced, he committed the

act charged. *People v. Hunt*, 72 Cal. App.3d 190, 139 Cal.Rptr. 675 (1977). A common scheme or plan embraces the commission of two or more crimes which are so related to each other that the proof of one crime tends to establish the proof of the other. *United States v. Weaver*, 565 F.2d 129 (8th Cir.1977). These burglaries were totally separate incidents occurring over a fifteen-month period and not interrelated to the crimes charged. Proof of one did not relate to proof of the others.

"In permitting evidence of prior offenses to be received as a part of a common plan or scheme, we have come perilously close to putting the defendant's character and record in issue notwithstanding his failure to take the witness stand, as in the instant case." *State v. Spreigl*, 272 Minn. 488, 139 N.W.2d 167, 171 (1965).

I would agree with *United States v. Phillips*, supra:

"For the purpose of showing 'intent and plan,' the district judge admitted testimony connecting the defendant with several bank robberies other than the robbery for which he was on trial. Something more than repeated performance of the same class of crimes is required in evidencing a 'design' or 'plan' which, if proved, may raise the inference that the accused was the perpetrator of the crime in question." 599 F.2d at 136.

The State attempts to bolster its argument by the theory that the other-crimes evidence was relevant to show a "complete story" and that the jury was entitled to know the complete story of appellant's activities during the period of December 1980 through February 1982. The State relies on the case *State v. Tharp*, 27 Wash.App. 198, 616 P.2d 693 (1980) for this proposition. However, they misread that case. In *State v. Tharp*, evidence was admitted of other criminal activity because the criminal acts were inseparable from the whole criminal scheme. The evidence was allowed because it consisted of a string of connected offenses and without it the prosecution could only present a fragmentary version of the entire transaction. The other acts admitted took place in a twenty-four hour period. In the present case the five burglaries took place over a fifteen-month period. They were not part of one transaction; admission of one crime did not present a more complete version of another burglary. Reliance upon this theory for admission of this other-crimes evidence is totally misplaced. And, it is impossible to tell which theory the majority relied upon for upholding the admission of evidence concerning the Boswell burglary since their entire analysis of that evidence consists of:

"We hold that it was not an abuse of discretion to admit into evidence the Boswell burglary * * *."

I would find that the evidence in this case is in the nature of character evidence introduced to prove that appellant acted in conformity with his character on these occasions. Admission for this purpose is clearly proscribed by Rule 404(a), W.R.E. *United States v. Biswell*, 700 F.2d 1310 (10th Cir.1983). The evidence was simply evidence of other burglaries by someone. Its predominant quality was to show the defendant's character as a burglar and his propensity for crime. *United States v. Biswell*, supra.

The majority concedes that the admission into evidence of the Bentley and McCue burglaries was error, but holds it to be harmless error. The trial judge carries with him during trial considerable credibility in the eyes of the jury. When he approves the admission of evidence of other crimes, he is saying the evidence is relevant and may be considered in determining defendant's guilt or innocence of the crime charged. The limiting instruction was not sufficient to overcome the prejudice. Here the jury heard evidence of two unsolved, unrelated burglaries—evidence held by the majority of this court to have been improperly admitted. I cannot, under any credible legal theory, find that to be harmless error. The result is appalling. In *United States v. Parker*, 604 F.2d 1327, 1329 (10th Cir. 1979), the court held that:

"Improper admission of evidence of a prior crime or conviction, even in the face of other evidence amply supporting the verdict, constitutes plain error impinging upon the fundamental fairness of the trial itself."

It is generally held that such error consistently requires reversal "even in the face of other evidence ample to support the verdict." *United States v. Gilliland,* 586 F.2d 1384, 1391 (10th Cir.1978); *United States v. Burkhart,* supra. And where there was a reversal because of improperly admitted evidence, the court stated that it was ironic that, although the evidence did not add to the case of the prosecution, they were still unable to say the evidence was harmless. *United States v. Mann,* supra. Other cases have resulted in reversal even though the admitted evidence was found not necessary for the prosecution. *United States v. Foskey,* supra. See, *United States v. Ring,* supra; *United States v. Fierson,* 419 F.2d 1020 (7th Cir.1969).

Evidence of three uncharged and unrelated burglaries was presented. These burglaries were not connected with appellant nor were they properly admitted under any of the exceptions of Rule 404(b). Appellant was foreclosed from having a fair trial on the merits; I can only describe the affirmance of this case as a travesty of justice and a denial of the safeguards which are designed to ensure a defendant a fair trial.